[Crim. No. 1056.   Second Appellate District, Division One.—March 6, 1924.]

# THE PEOPLE, Respondent, v. VICTOR TORTERICE, Appellant.

[1] CRIMINAL LAW—PERJURY—APPLICATION FOR MARRIAGE LICENSE—PLEADING.—Section 118 of the Penal Code, defining perjury, is not limited to the taking of an oath in a court proceeding; and an information charging an act of perjury in connection with an oath, taken by the accused before a deputy county clerk, for the purpose of obtaining a marriage license, states a public offense.

[2] ID.—OATH BEFORE DEPUTY CLERK—JURISDICTION.—Where such information shows that the deputy clerk before whom the oath was taken was acting in behalf of the clerk in the matter of the issuance of the marriage license, and the certificate at the end of the affidavit immediately following the signature of defendant sets forth that the affidavit was subscribed and sworn to before the county clerk, acting by said deputy, these facts are sufficient to show that the officer then and there had jurisdiction of the proceeding, to wit, the issuance of the marriage license.

[3] ID. — OATH TO APPLICATION — SUBSEQUENT AFFIDAVIT.—The facts that the accused (the applicant for a marriage license) only swore to the truth of the information contained in his written application, and that at the time of taking the oath the formal affidavit (embodying the information contained in the application) had not yet been written, signed, or certified, do not constitute a defense to a prosecution for perjury.

[4] ID.—AGE OF PURPORTED SPOUSE—KNOWLEDGE—PRIOR MARRIAGE—EVIDENCE.—In this prosecution for perjury alleged to have been committed by defendant in connection with an application for a marriage license, the evidence was sufficient to prove that the female with whom defendant contemplated matrimony was under the age of eighteen years, and that this fact was known to defendant; and, while there was no direct statement that the woman had not previously been married, ·the entire tenor of the testimony not only assumed, but tended to prove, that such was the fact.

[5] ID.—CORROBORATING CIRCUMSTANCES—EVIDENCE — INSTRUCTIONS.—In such prosecution, the corroborating circumstances having been plain and easy to understand, and thoroughly established, without

---

1.  See 21 **R. C. L.** 255.

5.  Number of witnesses and corroborative evidence necessary to support conviction for perjury, note, 6 **Ann. Cas.** 812. See, also, 21 **R. C. L.** 272.

contradiction, and the trial court having given an instruction stating the rule, as found in section 1968 of the Code of Civil Procedure, that perjury must be proved by the testimony of two witnesses or one witness and corroborating circumstances, the defendant was not prejudiced by the refusal of a requested instruction which told the jury that, before accepting such corroborating circumstances, it must test the sufficiency thereof alone and apart and without the aid of any other testimony in the case.

[6] ID. — DIRECT AND CIRCUMSTANTIAL EVIDENCE — INSTRUCTIONS. — In this prosecution for perjury, the jury is properly instructed as to the distinctions existing between direct and circumstantial evidence and as to the rule, as found in section 1968 of the Code of Civil Procedure, relating to corroboration.

[7] ID. — WEIGHT OF EVIDENCE — NUMBER OF WITNESSES — INSTRUCTIONS.—In a prosecution for perjury, it is not error to instruct the jury that they "are not bound to decide in conformity with the declarations of any number of witnesses which do not produce convictions in their minds against a less number, or against a presumption or other evidence satisfying their minds."

[8] ID.—APPLICATION AND AFFIDAVIT—ONE TRANSACTION—MATERIALITY OF OATH — INSTRUCTIONS. — In this prosecution for perjury alleged to have been committed in connection with the procuring of a marriage license, although the only oath administered to defendant was with reference to the application for the license and not in connection with the writing out and signing of the affidavit, such oath having been administered, and the affidavit executed, as part of one transaction, the court properly instructed the jury that if they should find "that the clerk at said time required" of defendant "the making of an affidavit and the subscribing to the same, and that the same was done, and that at the same time the clerk required" defendant "to take the oath prescribed by law, and that said oath was administered to him, and that a marriage license was thereupon issued, that it would be immaterial as to whether a marriage ceremony was performed or not and the act of said clerk in requiring the oath to be administered would be conclusive as to its materiality."

[9] ID.—INSTRUCTIONS—SETTING OUT INFORMATION.—In this prosecution for perjury alleged to have been committed by defendant in connection with an application for a marriage license, it was not error to give an instruction which sets out the information.

[10] ID.—INTENT — ILLUSTRATIONS — INSTRUCTIONS.—In such prosecution, the court having given the first portion of one of defendant's requested instructions, which defined the criminal intent necessary,

---

7. See 8 **Cal. Jur.** 351; 10 **Cal. Jur.** 1142.

it was not error to refuse the illustrative additions thereto requested by defendant.

[11] Id. — Failure to Call Mother as Witness — Instructions— Lack of Prejudice.—The evidence in the case having strongly established the fact that the female with whom defendant had contemplated marriage was only seventeen years of age, and it having been equally within the power of defendant to have called the mother of said female to support his testimony relating to her age as it was within the power of the prosecution to call the mother to rebut such testimony, the defendant was not prejudiced by the refusal of the trial court to instruct the jury that "the unexplained failure to call and examine as a witness a person who has peculiar knowledge of material facts at issue warrants the inference that his testimony would have been unfavorable to the party to whom the witness was available and who would naturally be expected to produce him under the circumstances."

[12] Id.—Scope of Information—Erroneous Instruction.—In such prosecution, the information having not only charged that defendant made and subscribed his name to the affidavit, but also directly charged that at said time and place defendant did falsely depose and swear, etc., the trial court properly refused an instruction requested by defendant which limited the case of the prosecution to the charge that defendant did under oath make and subscribe to the affidavit set forth in the information.

[13] Id. — Manner of Completing Affidavit — Evidence. — In such prosecution, the testimony of the deputy clerk having shown that the facts, as stated in the affidavit signed by defendant, were transferred from the statement of facts set out in the application blank, which was filled out and signed by defendant, and that defendant made oath to the truth of those facts, a sufficient foundation was laid for the introduction in evidence of said affidavit.

[14] Id.—Birth Certificate—Italian Spelling—Evidence.—In such prosecution, the father of the female with whom defendant had contemplated marriage having testified as to the age of his daughter, and having testified as to the spelling of her name, as well as of the family name and of her mother's name, in Italian, a sufficient foundation was laid for the introduction in evidence of a birth certificate purporting to be that of the female in question, but using the Italian spelling of the names.

[15] Id.—Failure to Object to Evidence—Motion to Strike Out— Discretion.—In such prosecution, the deputy clerk having testified, without objection, as to the contents of the so-called application blank (which was not in evidence), the trial court did not commit an abuse of discretion in denying defendant's motion to strike out such testimony.

[16] ID.—EXISTENCE OF WIFE IN DISTANT CITY—REFUSAL TO STRIKE OUT TESTIMONY—ABSENCE OF PREJUDICE.—In this prosecution for perjury alleged to have been committed by defendant in connection with an application for a marriage license, in that he swore falsely as to the age of the female with whom he contemplated matrimony, the record did not sustain the contention of defendant that the trial court erred to his prejudice in refusing to strike out the statement by a certain witness to the effect that defendant had a wife in a distant city.

[17] ID.—WIFE AS WITNESS—MISCONDUCT—ABSENCE OF ASSIGNMENT. In such prosecution, the court having sustained defendant's objection to the introduction of any testimony by the female whom defendant had purported to marry, on the ground that she was his wife, but there having been no assignment of misconduct by the district attorney in the offering of the testimony of said witness, any alleged error in that regard cannot be considered on appeal.

---

(1) 30 Cyc., p. 1407.   (2) 30 Cyc., p. 1431.   (3) 30 Cyc., p. 1417. (4) 30 Cyc., pp. 1449, 1451.   (5) 30 Cyc., p. 1458.   (6) 30 Cyc., p. 1458.   (7) 16 C. J., p. 1108, sec. 2432.   (8) 30 Cyc., p. 1457. (9) 30 Cyc., p. 1456 (1926 Anno.).   (10) 16 C. J., p. 1068, sec. 2508 (1926 Anno.).   (11) 16 C. J., p. 1023, sec. 2450 (1926 Anno.). (12) 16 C. J., p. 1048, sec. 2490.   (13) 30 Cyc., p. 1447 (1926 Anno.). (14) 16 C. J., p. 740, sec. 1520.   (15) 16 C. J., p. 881, sec. 2206. (16) 17 C. J., p. 333, sec. 3677.   (17) 17 C. J., p. 180, sec. 3472.

APPEAL from a judgment of the Superior Court of Orange County. R. Y. Williams, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. Morgan Marmaduke for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

CONREY, P. J.—This is an appeal by the defendant from the judgment and from an order denying his motion for a new trial in an action wherein he was convicted of the crime of perjury.

The alleged act of perjury related to an oath, taken by the defendant before a deputy county clerk of Orange County, for the purpose of obtaining a license to marry one Jennie Patt. In the information it is alleged that for the stated purpose the defendant made and subscribed his name

to an affidavit which stated, among other things, that Jennie Patt was then of the age of nineteen years; that said affidavit was delivered to said officer by the defendant as true; that the defendant then and there well knew that the statement that said Jennie Patt was of the age of nineteen years was false, and that in fact her age was seventeen years; that the defendant did then and there willfully, unlawfully, knowingly, falsely, and feloniously depose and swear that said Jennie Patt was of the age of nineteen years, well knowing at the time that she was not of the age of nineteen years, but in truth and in fact was of the age of seventeen years; that the marriage license applied for was then and there issued by the deputy clerk, by whom the defendant was duly sworn to testify and certify truly concerning the matters stated in said affidavit.

[1] Appellant contends, first, that the information does not state a public offense, and does not allege commission of the crime of perjury. Counsel for appellant contends that the making of a false affidavit, as alleged in the information, is not a public offense, except when intended to be used in a court proceeding. The sole authority cited by him in support of this proposition does not sustain his contention. Section 118 of the Penal Code, defining perjury, is not in terms limited to the taking of an oath in a court proceeding. We are not aware of any decision which limits the section in that manner. Section 69 of the Civil Code states the facts which must appear in order to authorize the issuance of a license to marry a female who is under the age of eighteen years and who has not previously been married. "For the purpose of ascertaining all the facts mentioned or required in this section, the clerk, at the time the license is applied for, may, if he deems it necessary in order to satisfy himself as to matters in this section enumerated, examine the male applicant for a license on oath, which examination shall be reduced to writing by the clerk, and subscribed by him." It thus appears that the oath was administered in a case provided by law, and related to a material matter concerning which, according to the information, the defendant knew that his statement was false.

[2] It is further contended by appellant that the information is lacking in a vital element necessary to properly charge the offense of perjury, in that there is no allegation that the person or officer before whom the oath was taken or affidavit

made was a person then having jurisdiction of the proceeding in which the oath was administered or affidavit made and filed. The information shows that the deputy clerk before whom the oath was taken was acting in behalf of the clerk in the matter of the issuance of said marriage license. The certificate at the end of the affidavit immediately following the signature of the defendant sets forth that the affidavit was subscribed and sworn to before the county clerk, acting by said deputy. These facts were sufficient to show that the officer then and there had jurisdiction of the proceeding, to wit, the issuance of the marriage license.

[3] It is next contended by appellant that the verdict is contrary to the evidence, in that perjury is not proven thereby. We have read the evidence on which counsel relies in support of this contention. Among other things, the deputy clerk testified that the applicant was sworn to the truth of the information set forth in the application blank; that the facts were then written out by the clerk (by transfer from the application) as an affidavit. "Then I had him swear to this affidavit and then filled out the balance of it myself." There was no explanation showing what the witness intended by the phrase "then filled out the balance of it myself." But the "balance of it," so far as appears, consisted of nothing more than the jurat or officer's certificate to the oath. It is true that according to the testimony of the officer, the information to which the oath referred, as administered by him at that time, was the information contained in the application blank; that the formal affidavit itself had not yet been written, signed, or certified. It is upon this claimed irregularity in the transaction that appellant bases a claim that the evidence does not prove that he made oath to the affidavit, and that the court erred in admitting the affidavit in evidence. But we think that since the oath was directed to the truth of the identical facts (the statements in the affidavit being contained in the application), and the application and the affidavit, together with the issuance of the license, were all parts of one transaction, this irregularity affords appellant no avenue of escape. It is provided in section 121 of the Penal Code that it is no defense to a prosecution for perjury that the oath was administered or taken in an irregular manner " . . . if such accused caused or procured such officer to certify that the oath had been taken or administered." And section 129 of the Penal Code

reads as follows: ''Every person who, being required by law to make any return, statement, or report, under oath, willfully makes and delivers any such return, statement, or report, purporting to be under oath, knowing the same to be false in any particular, is guilty of perjury, whether such oath was in fact taken or not.''

[4] The evidence leaves no reasonable doubt that Jennie Patt was under the age of eighteen years, and that this fact was well known to the defendant, who was her cousin. Only three months before making this affidavit he had been present at the family celebration of her seventeenth birthday. It may be true, as counsel contends, that there is no direct statement that Jennie Patt had not previously been married. It does appear, however, from the evidence of her father and other witnesses that she still bore the family name, and that down to the time of the transactions here in question she had lived with her parents as a member of their family. The entire tenor of the testimony not only assumes, but tends to prove, that this young girl had not previously been married.

Appellant claims that the court made certain errors in the instructions given to the jury, and in refusing to give certain instructions requested by the defendant. As the instructions are not numbered, we are obliged to identify them in a less convenient manner. (a) Refusing the instruction found in Clerk's transcript, line 14, of page 30, to line 6, of page 32. (b) Instruction given; clerk's transcript, page 17, line 18, to page 18, line 9. (c) Instruction given; clerk's transcript, page 21, lines 5 to 8. (d) Instruction given; clerk's transcript, page 18, lines 21 to 24. (e) Instruction given; clerk's transcript, page 20, line 16, to page 21, line 3. (f) Instruction given; clerk's transcript, page 22, line 10, to page 24, line 9. (g) Instruction refused; clerk's transcript, page 27, line 20, to page 28, line 8. (h) Instruction refused; clerk's transcript, page 38, lines 9 to 15. (j) Instruction refused; clerk's transcript, page 32, line 8, to page 34, line 13.

[5] Concerning the refused instruction ''a'': This was in substance an instruction containing and commenting upon section 1968 of the Code of Civil Procedure, which provides that perjury must be proved by the testimony of two witnesses or one witness and corroborating circumstances. The proposed instruction, after quoting that section, states that

"corroborating circumstances in this case would be such credible testimony, as standing alone and without the aid of any other testimony given during the trial would tend to prove the fact in question, to wit, that Jennie Patt was on the eleventh day of June, 1923, under the age of eighteen years and that defendant made and subscribed to the affidavit as set forth in the information, and in determining whether there is credible testimony of such corroborating circumstances in this case, you must test the sufficiency of such testimony by considering it alone and apart and without the aid of any other testimony which you have heard in this case and after considering such testimony alone and as if you had heard no other testimony in the case, you believe it tends to prove that the girl Jennie Patt was on the eleventh day of June, 1923, under the age of eighteen years and defendant made and subscribed to the affidavit set forth in the information, it is competent evidence for you to consider along with the testimony of the other witness to the same fact, if you believe there is such other credible testimony given by a witness, and unless you so find, in addition to the other necessary facts to be proven as set out in another part of this instruction, you should acquit the defendant."

The court did give an instruction (c) stating the rule as found in said section 1968 of the Code of Civil Procedure. The gist of appellant's complaint is that the court refused this instruction (a) which undertook to explain and apply to the case the meaning of the phrase "corroborating circumstances." Assuming that there is no valid objection to the statement of the meaning and effect of the phrase "corroborating circumstances," as set forth in the requested instruction, yet we think that the refusal was not prejudicial error sufficient to warrant a reversal of the judgment in this case. The age of Jennie Patt was, by the testimony of at least two witnesses, proven to be less than eighteen years. And although the record contains the testimony of only one witness directly to the fact that the defendant made and subscribed to the affidavit, the affidavit itself, with the signature of the defendant appended thereto, and an official certificate in due form showing that it had been subscribed and sworn to by the defendant, together with the fact that the marriage license was issued to the defendant at the same time, are corroborating circumstances in relation to the testimony that the defendant made and subscribed to the affida-

vit. A properly certified record of any birth or death or marriage, registered as provided by law, is *"prima facie* evidence in all courts and places of the facts therein stated." (Sec. 21 of the act concerning vital statistics, as amended; Stats. 1919, p. 448.) These circumstances corroborating the testimony are so plain and easy to understand, and were so thoroughly established, without contradiction, that we cannot see how the defendant was prejudiced by failure of the court to tell the jury that before accepting such corroborating circumstances, together with the testimony of the witnesses tending to prove these particular issues of the facts, the jury must test the sufficiency of the testimony of such corroborating circumstances alone and apart and without the aid of any other testimony which they have heard in the case.

[6] The instruction "b" pointed out the distinctions existing between direct and circumstantial evidence. The instruction "c" gave the rule stated in section 1968 of the Code of Civil Procedure, which we have set forth, in substance, in our discussion of the refused instruction "a." There was no error in giving these instructions.

[7] The court did not err in giving that part of the instruction "d" reading: " . . . the jury are not bound to decide in conformity with the declarations of any number of witnesses which do not produce convictions in their minds against a less number, or against a presumption or other evidence satisfying their minds."

[8] The court did not err in giving the instruction "e," wherein the jury were instructed that if they should find "that the clerk at said time required of said Victor Torterice the making of an affidavit and the subscribing to the same, and that the same was done, and that at the same time the clerk required the said Victor Torterice to take the oath prescribed by law, and that said oath was administered to him, and that a marriage license was issued thereupon, that it would be immaterial as to whether a marriage ceremony was performed or not and the act of said clerk in requiring the oath to be administered would be conclusive as to its materiality." The argument is that this instruction could not be applicable under the testimony because the only testimony to the transaction in question showed without conflict that the oath was administered with reference to the application blank and not in connection with the writing out and

signing of the affidavit. This argument is answered by the fact that the oath was administered, and the affidavit executed, as parts of one and the same transaction, and all for one and the same purpose. And, therefore, under the sections of the Penal Code and Civil Code above cited, the instruction was correct.

[9] The court did not err in giving the instruction "f," which instruction sets out the information. The point urged here is that the information, if found to be true, would not constitute a crime; and that even if it did state the commission of a crime, the instruction is erroneous in view of the testimony which disproved that the defendant was sworn to answer truly any questions propounded to him relating to the age of the girl, but that the defendant only swore to the truth of the facts contained in the application blank. There is no merit in this assignment of error.

[10] The court did not err in refusing to give defendant's instruction "g." The court gave the first portion of this instruction, which defined the criminal intent necessary, but refused the illustrative additions thereto requested by the defendant. The instruction was complete without the concrete examples.

[11] It is contended that the court erred in refusing to give the following instruction "h" requested by the defendant: "You are instructed that the unexplained failure to call and examine as a witness a person who has peculiar knowledge of material facts at issue warrants the inference that his testimony would have been unfavorable to the party to whom the witness was available and who would naturally be expected to produce him under the circumstances." Appellant bases his claim of error on this point on the fact that defendant testified to a conversation with the mother and father of Jennie Patt wherein Mrs. Patt stated that Jennie was going to be nineteen and Mr. Patt said seventeen years old; that Mrs. Patt said her daughter would be nineteen years old on the twenty-third day of February; that at the birthday party Mrs. Patt again stated that the girl's age was nineteen years. Mrs. Patt was not called as a witness at the trial of this case. So far as appears, she easily might have been called to rebut this testimony of the defendant if it had not been true. But it is equally true that Mrs. Patt might have been called by the defendant to sup-

port his testimony concerning statements made by her if his testimony had been true. In view of the fact that the direct testimony of the witnesses, together with the registered certificate of birth, strongly establishes the fact that on the twenty-third day of February, 1923, the age of Jennie Patt was only seventeen years, it becomes improbable that the mother would have stated at that time that the girl's age was nineteen years. Under these circumstances, even assuming that the instruction itself states a correct rule of law, we hold that no prejudicial error was involved in the refusal to give the requested instruction.

[12] The court did not err in refusing to give defendant's instruction "j," which defines the elements of the crime of perjury and the kind of evidence necessary, under section 1968 of the Code of Civil Procedure, to prove perjury. This instruction, as requested by defendant, limited the case of the prosecution to the charge that the defendant did under oath make and subscribe to the affidavit set forth in the information. It will be noted, however, that the information not only charged that the defendant made and subscribed his name to the affidavit, but also directly charged that at said time and place the defendant did falsely depose and swear, etc.

Appellant contends that the court erred in overruling the objection of the defendant to the introduction in evidence of the so-called affidavit, as set forth in the information, and to the order of the court overruling the objection of the defendant to the admission of an exhibit purporting to be a birth certificate of one Jovana Patti. [13] With reference to the affidavit the point is that the affidavit was secondary evidence, if it could have been evidence at all, and that no foundation had been laid for its admission; that in fact the witness Morrison, deputy clerk, testified that the so-called affidavit was written up and signed after the defendant had been sworn to the truth of the statements contained in the "application blank," which was first written; and that the application blank was not introduced in evidence. We find, however, that Morrison testified that the facts, as stated in the affidavit signed by the defendant, were transferred from the statement of facts set out in the application blank, and that the defendant made oath to the truth of those facts. In view of the provisions of the sec-

tion of the Penal Code, to which we have referred, we think that a sufficient foundation was laid for the introduction in evidence of said affidavit.

[14] Concerning the birth certificate, appellant suggests that it was introduced in the hope that it would be a corroborating circumstance to support the direct testimony of Frank Patt that the girl was, on the eleventh day of June, 1923, of the age of seventeen years, and not of the age of nineteen years; that no other direct testimony than that of Frank Patt was given as to the age of the girl; that the birth certificate was inadmissible, particularly because no foundation was laid for its introduction. We have cited, *supra,* the statute by which such certificates are made admissible evidence. Frank Patt testified that the first name of his daughter, Jennie Patt, in Italian is spelled Jovana, and that the family name in Italian is Patti; that the name of Mrs. Patt in Italian is Vinguenza, and that her maiden name was Torterice. The record of the birth certificate, as introduced in evidence, shows the birth, on February 23, 1906, of a female child, Jovana Patti; that the father was Frank Patti, and that the mother's maiden name was Virginia Tartarige. There is no reasonable doubt that this was the certificate of birth, filed on the date of her birth, of the said Jennie Patt. We find, also, that the sister of Jennie Patt testified that Jennie's age was "seventeen last February."

[15] Appellant claims that the court erred in overruling his objection to the testimony of witness Morrison as to what the so-called application blank contained, it not being in evidence and no foundation being laid as to oral testimony as to its contents. The "objection" was not a timely objection, but was a motion to strike out, after the testimony had been given. There was no abuse of discretion in denying this motion.

[16] On direct examination of Louise Proftia, sister of Jennie Patt, as a witness for the people, in response to the question: "What conversation did you hear between Victor Torterice, the defendant, and your father?" She replied: "My father told him to get out of the house because he had a wife in Chicago; he shouldn't write to Jennie." Then this occurred: "Q. What did he say, if anything? A. He didn't say anything; he said he didn't write that letter." Defend-

ant's counsel then said: "I ask that that answer be stricken out till I have the time to object, rather that part of it referring to the statements which have nothing to do—doesn't charge this defendant with any knowledge of the age of the girl—and ask that the jury be advised to disregard it." This motion was denied. The terms of the motion are so indefinite and so placed in the record that we cannot say that they applied to anything except the last answer. The claim that the court erred to the prejudice of the defendant in refusing to strike out the statement indicating that the defendant had a wife in Chicago is not sustained by this record.

[17] Jennie Patt was introduced as a witness for the people. She stated that her age was seventeen. Counsel for defendant objected to the introduction of any testimony of the witness on the ground that she is the wife of the defendant. The court permitted defendant's counsel to ask preliminary questions on that point. He thereupon asked the witness: "Are you the wife of the defendant?" She replied, "No; because he has another wife in Chicago." On motion of counsel for defendant this answer was stricken out. The witness having then admitted that she did marry the defendant, she was not permitted to testify any further. The court afterward gave the instructions requested by the defendant to the effect that offers of evidence not allowed by the court are not to be considered as any evidence of the existence of the facts thus offered to be proven, and that the jury must not consider anything except the instructions of the court and the evidence produced at the trial. In connection with the offer of this evidence it is to be noticed that there is no assignment of misconduct in the offering of the testimony of this witness, so that that point cannot be considered at this time.

It is evident from the record that the defendant had a fair trial and was justly convicted. The judgment and order are affirmed.

Houser, J., and Curtis, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 1, 1924, and a petition

by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May. 5, 1924.

All the Justices concurred.