[No. B110418. Second Dist., Div. One. July 14, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY MICHAEL GRIFFINI, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts B through D.

582

## COUNSEL

Ralph Joseph Novotney, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Brad D. Levenson and Thomas Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MASTERSON, J.**—A person who makes a material and knowingly false statement in an affidavit is guilty of perjury only if he delivers the affidavit to another person with the intent that it be uttered or published as true. (Pen. Code, §§ 118, 118a, 124.) This case presents the question of whether a declaration (see Code Civ. Proc., § 2015.5) should be treated in the same manner as an affidavit in a perjury prosecution. We conclude that, like an affidavit, a declaration must be delivered to someone with the intent that it be uttered or published as true. The mere making of a declaration is not sufficient.

### BACKGROUND

In November 1994, defendant Anthony Griffini, came to California from Missouri. He traveled with a friend, Aaron, with whom he had served time in a Missouri prison. Defendant took up residence at the home of Aaron's aunt, Sherry, in Lancaster, California. Sherry learned about defendant's criminal background through conversations with Aaron and defendant.

Sherry was employed as the manager of Regional Patrol Services (RPS) in Quartz Hill, California. She suggested that defendant apply for a job at RPS as a security guard. In December 1994, defendant completed an application

for employment with RPS. According to defendant, Sherry told him that to qualify for the job, he would have to use a fictitious name and Social Security number and would have to deny that he had been convicted of any crimes. On the job application, defendant used the fictitious name "Michael Paul Stuart" and gave a false Social Security number. In response to a question on the application about whether he had been convicted of a felony within the last seven years, defendant answered "no."[1] Defendant testified that, after he agreed to use a false name, Sherry said she would "take care of everything."

Because defendant was not registered in California as a security guard, he was required to take a written test concerning the power to arrest. (See former Bus. & Prof. Code, §§ 7545.1, 7545.2, added by Stats. 1983, ch. 1196, § 2.5, pp. 4573-4574, and repealed by Stats. 1994, ch. 1285, § 5, now Bus. & Prof. Code, §§ 7583.6, 7583.7, added by Stats. 1994, ch. 1285, § 6.) After passing the test, defendant was supposed to complete an "Application for Registration as a Security Guard or Patrolperson" and submit the registration form and a fingerprint exemplar to the California Department of Consumer Affairs, Bureau of Collection and Investigative Services (Bureau). (See former Bus. & Prof. Code, § 7546, added by Stats. 1983, ch. 1196, § 2.5, p. 4574, and repealed by Stats. 1994, ch. 1285, § 5, now Bus. & Prof. Code, § 7583.9, added by Stats. 1994, ch. 1285, § 6.)[2]

The Bureau's registration form consisted of three identical pages that were attached at the top, perforated, and separated by two carbon sheets. The top page, a white original, was to be submitted directly to the Bureau (with the fingerprint card); the second page, a pink duplicate, was to be retained by the applicant as a temporary registration card; and the last page, a yellow duplicate, was to be kept by the employer.

Defendant was convicted of perjury based on a security guard registration form dated December 31, 1994, which bore the printed name "Michael Paul Stuart" at the top. Defendant's home address, his work address, and a false Social Security number appeared in handwriting below his name. The form also contained a series of "yes or no" questions. The "no" box was checked in response to the following question: "Have you ever been convicted of any crime or entered a plea of nolo contendere? (**This includes misdemeanors and felonies regardless of the length of time which has lapsed since their**

---

[1]In fact, during that time period, defendant had been convicted of three felonies in Missouri: attempted robbery in the first degree, burglary in the first degree, and burglary in the second degree. For those offenses, he served over three years in prison. He was released in October 1993.

[2]The Bureau is now known as the Bureau of Security and Investigative Services. (Bus. & Prof. Code, § 7580.4, added by Stats. 1994, ch. 1285, § 6.)

**occurrence.** Minor traffic violations resulting in a fine of $499 or less do not need to be disclosed.) . . ." (Original boldface.) The bottom of the registration form contained the attestation, "I hereby apply for registration as a security guard or patrolperson and declare under penalty of perjury, under the laws of the State of California, that . . . the statements made on this application are true." Below the attestation appeared the signature "Michael P. Stuart" and the handwritten date "Dec. 31, '94." The pink and yellow copies of the completed form contained the same handwritten information as the white original.

Defendant testified that he did not sign the registration form, did not put any information on it, and did not ask anyone to sign it. He claimed he did not know who had signed the form or when it was signed. Defendant stated that he had nothing to do with signing the form. He testified that Sherry gave him the pink copy of the completed form and told him, "[K]eep this on you at all times but if they start questioning it, call me." According to defendant, he never received the white original or the yellow copy of the form.

At the time the registration form was signed, there were only two employees who worked in the RPS office: Sherry, the manager, and Nancy, an administrative assistant. Nancy testified that she generally handled all of the paperwork in the office, including the completion of security guard registration forms and their placement in the personnel files. If Nancy did not handle the paperwork, Sherry did.

The completed registration form bearing defendant's name was never sent to the Bureau. RPS kept the white original and the yellow copy in defendant's personnel file. Defendant took the pink copy, folded it, and put it in the pocket of one of his work shirts.

In May 1996, the People filed an information against defendant, charging him with perjury in violation of Penal Code section 118, subdivision (a).[3] The information alleged that defendant had made material and knowingly false statements on the security guard registration form by providing an incorrect name and Social Security number and by denying his prior criminal convictions. After a preliminary hearing, at which defendant was held to

---

[3]That statute provides: "Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, and *every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury. . . ."* (Italics added.)

answer, the People filed an amended information, charging defendant with the same crime and, in addition, alleging three prior out-of-state convictions for purposes of the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12).

Defendant pleaded not guilty and denied the priors. Trial was by jury. The trial court instructed the jury on the elements of perjury as set forth in CALJIC, stating: "In order to prove this crime, each of the following elements must be proved: [¶] 1. A person declared under penalty of perjury and willfully stated as true a matter which was false. [¶] 2. The declaration under penalty of perjury was made in circumstances permitted by law. [¶] 3. The person knew the statement was false and was being made under the penalty of perjury. [¶] 4. The false statement was material. [¶] 5. The person had the specific intent to declare falsely under penalty of perjury." (See CALJIC No. 7.21 (6th ed. 1996 bound vol.).)

The jury found defendant guilty of perjury and found true the allegations of prior felony convictions. The trial court struck two of the three out-of-state priors because they did not qualify as violent or serious felony convictions under California law (see *People* v. *Myers* (1993) 5 Cal.4th 1193 [22 Cal.Rptr.2d 911, 858 P.2d 301]) and sentenced defendant to six years in prison (see Pen. Code, §§ 126, 667, subds. (d)(2), (e)(1), 1170.12, subds. (b)(2), (c)(1)). Defendant filed a timely appeal from the judgment.

### DISCUSSION

■ Defendant contends that he could not be guilty of perjury unless he delivered the completed security guard registration form to another person with the intent that it be uttered or published as true. We agree.

### A. *Elements of Perjury*

The People charged defendant with violating Penal Code section 118 in that he provided material and knowingly false information on the registration form while attesting under penalty of perjury that the information was true. Penal Code section 118 defines perjury to include the making of a material and knowingly false assertion in a "declaration" or "certificate."[4] ■ A "declaration" is an unsworn written statement certified to be true under penalty of perjury. (Code Civ. Proc., § 2015.5.) A "certificate" is " ' "a

---

[4]The statute actually refers to a "certification" instead of a "certificate." (See fn. 3, *ante*.) However, because those terms are interchangeable, we will use the word "certificate" for the sake of consistency. (See Webster's Third New Internat. Dict. (1993) p. 367, cols. 1-2 [defining "certification" as "a certified statement: CERTIFICATE"].)

written testimony to the truth of any fact." ' " (*Cal. Employment Com.* v. *Malm* (1943) 59 Cal.App.2d 322, 324 [138 P.2d 744]; accord, Black's Law Dict. (6th ed. 1990) p. 225, col. 2.) An "affidavit" is a written statement verified by oath or affirmation. (*Common Wealth Ins. Systems, Inc.* v. *Kersten* (1974) 40 Cal.App.3d 1014, 1031 [115 Cal.Rptr. 653]; 34 Ops.Cal.Atty.Gen. 60, 61-62 (1959); Code Civ. Proc., § 2003.) ▪ Because defendant's security guard registration form was signed under penalty of perjury, it constitutes a "declaration" and possibly a "certificate," but not an "affidavit."[5]

Section 124 of the Penal Code provides that, for purposes of defining perjury, "[t]he making of a deposition, *affidavit* or *certificate* is deemed to be complete . . . from the time when it is delivered by the accused to any other person, with the intent that it be uttered or published as true." (Italics added.) Admittedly, section 124 does not use the term "declaration." Nevertheless, the delivery requirement of section 124 would apply in this case if the security guard registration form constitutes a "certificate." Alternatively, the delivery requirement would apply if the registration form is treated as the legal equivalent of an "affidavit." With respect to this latter proposition, section 2015.5 of the Code of Civil Procedure provides that "[w]henever . . . any matter is required or permitted to be . . . proved by . . . *affidavit*, in writing of the person making the same . . . , such matter may with *like force and effect* be . . . proved by . . . *declaration* . . . , in writing of such person which recites that it is certified or declared by him or her to be true under penalty of perjury . . . ." (Italics added.)[6] Under either theory, defendant could not be guilty of perjury unless he gave the completed registration form to someone with the intent that it be uttered or published as true.

In the context of civil litigation, courts have repeatedly acknowledged that section 2015.5 renders "[a] declaration under penalty of perjury . . . the legal equivalent of an affidavit." (*Chronometrics, Inc.* v. *Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 603, fn. 2 [168 Cal.Rptr. 196]; accord, *City and County of San Francisco* v. *Evankovich* (1977) 69 Cal.App.3d 41, 53 [137 Cal.Rptr. 883]; *Aero Properties, Inc.* v. *Gottlieb* (1962) 206 Cal.App.2d 711, 713, fn. 1 [24 Cal.Rptr. 277].) Here, the People contend that section 2015.5 does not equate a declaration with an affidavit for purposes of section 124. In addition, the People argue that a security guard registration form does not constitute a "certificate" under section 124.

---

[5] Code of Civil Procedure section 2015.5 governs the form and content of the attestation clause in a declaration or certificate. In this case, there is no dispute that the completed registration form was adequate under section 2015.5. (Cf. *People* v. *Flores* (1995) 37 Cal.App.4th 1566, 1573-1576 [44 Cal.Rptr.2d 585] [substantial compliance with section 2015.5 is sufficient in perjury case].)

[6] All further references to sections 124 and 118 are to the Penal Code; all further references to section 2015.5 are to the Code of Civil Procedure.

At the outset, we question the logic of the People's position. Penal statutes should be given a reasonable and commonsense construction. (*People* v. *Flores* (1996) 51 Cal.App.4th 1199, 1204 [59 Cal.Rptr.2d 637].) Absurd consequences are to be avoided if possible. (*People* ex rel. *Lungren* v. *Superior Court* (1996) 14 Cal.4th 294, 305 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) Our initial reaction to the People's argument is that it defies common sense and leads to an absurd result.

Plainly, the execution of an affidavit involves a more formal and exacting process than signing a declaration or certificate. An affiant must take an oath before a duly authorized officer. (Code Civ. Proc., § 2012.) If the affiant appears before a notary public, the notary must affix an official seal to the affidavit and record various aspects of the verification process in a journal. (Gov. Code, §§ 8205, subd. (a)(3), 8206, 8207.) In contrast, an individual can create a declaration simply by signing a statement under penalty of perjury. Yet, as the People would have it, the delivery requirement applies only to an affidavit. Thus, an individual who walks away from a notary with a false affidavit does not commit perjury unless he gives the affidavit to someone with the intent that it be uttered or published as true. But an individual who signs a false declaration in solitude and then immediately throws it away is guilty of perjury (assuming the knowingly false statement is material). In this scenario, the affiant appears to be the more culpable offender and arguably should be guilty of perjury upon violating the oath before the notary. Surely it would be absurd to treat the declarant more harshly than the affiant. As it turns out, the law treats them the same.

In reviewing the pertinent statutory history and case law, we keep two questions in mind: Does defendant's security guard registration form constitute a "certificate" within the meaning of section 124, and is a "declaration" the legal equivalent of an "affidavit" for purposes of section 124? We answer both questions in the affirmative.

As first enacted in 1872, section 118 covered false statements made under oath; it did not encompass false statements made under penalty of perjury. The statute provided: "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, willfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury." (Ann. Pen. Code, (1st ed. 1872, Haymond & Burch, comrs.-annotators) § 118, p. 58.) Section 124, also enacted in 1872, stated: "The making of a deposition or certificate is deemed to be complete, within the provisions of this Chapter, from the

time when it is delivered by the accused to any other person, with the intent that it be uttered or published as true." (Ann. Pen. Code, *supra*, § 124, at p. 62.)[7]

According to the code commissioners who drafted the original Penal Code, the phrase "testify, declare, depose, or certify" in section 118 "is not intended to confine the definition of perjury to testimony and depositions, strictly so called. On the contrary, the section defining perjury is broad enough to embrace every class of statement which by law may be attested by oath applying to the particular statement, in distinction from the general oath taken by public officers. Nearly every mode of oral statement under oath is embraced by the term 'testify,' and nearly every written one in the term 'depose.' But as doubts may arise as to the full extension of these terms, in peculiar cases, the Commissioners have added 'declare' and 'certify,' in order that all modes of statement may be clearly included." (Code comrs. note Ann. Pen. Code, *supra*, foll. § 118 at p. 60, italics added.)

In *People* v. *Robles* (1897) 117 Cal. 681 [49 P. 1042], the Supreme Court discussed the delivery requirement of section 124 for the first time. There, Aggie Abbott had been convicted of grand larceny in an earlier prosecution. She moved for a new trial based on an affidavit from William Robles in which he stated that he, not Abbott, had committed the theft. The People successfully prosecuted Robles for perjury based on his allegedly false affidavit. In reversing Robles's conviction, the high court stated:

"Before a party may be convicted of perjury in making a false affidavit, he must either use the affidavit for a purpose contemplated by section 118 of the Penal Code, or deliver it to some[one] for such use. This principle of law is recognized and declared by section 124 of the chapter of the Penal Code bearing upon the crime of perjury, where it is declared: 'The making of a deposition or certificate is deemed to be complete, within the provisions of this chapter, from the time when it is delivered by the accused to any other person with the intent that it be uttered or published as true.' The word 'deposition' here used includes 'affidavit.'[8] In effect . . . section [124] declares that an affidavit will not support a charge of perjury until it has

---

[7]In its original form, section 124 did not refer to affidavits.

[8]Since 1872, the Code of Civil Procedure has defined "deposition" as "a written declaration, under oath, *made upon notice to the adverse party*" (21-22 West's Ann. Code Civ. Proc. (1983 ed.) § 2004, pp. 62-63, italics added), while "affidavit" has been defined as "a written declaration under oath, *made without notice to the adverse party*" (*id.*, § 2003, p. 61, italics added). In finding that a "deposition" includes an "affidavit," the *Robles* court eschewed a strict application of the code definitions and instead construed those terms in accordance with the code commissioners' comment that the word "depose" be read broadly to include nearly

been delivered by the accused with intent to be uttered as true. The soundness of this doctrine is fully recognized by the trial court, for the jury were told as a matter of law, before retiring to deliberate upon a verdict, '. . . [I]f [defendant] made that affidavit before the officer and then kept the paper in his possession, he cannot be convicted of the crime of perjury; and so before you convict him you must be satisfied, among other things, that he allowed the officer to take the affidavit away; delivered it to him, either formally or in the sense of allowing him to take it away for the purpose of being used in support of the motion for a new trial. He must have so delivered it to the clerk, put it out of his power and custody into the custody of the clerk, or of some[one] else, for the purpose of being used in support of that motion for a new trial.'

". . . The fact that the affidavit was used by the attorney of Abbott upon the hearing of the motion adds no strength to the pleading. Perchance it was purloined for the purpose. There is nothing in the pleading to indicate that it was so used at the request or with the consent of this defendant. Perhaps it was never intended to be so used. Perhaps it was used under objection and protest of the defendant. . . . Here the indictment only charges the making of the false affidavit; it does not charge enough. It should have declared that the affidavit was delivered with the intent that it be uttered and published as true. Such a statement in the pleading is just as necessary as to charge that the affidavit was made by the accused, or that it was false; if it were possible, more necessary, for while the affidavit remains in the hands of the accused no mischief is done. It is only when it leaves his hands that evil results follow. Hence the law says there is no crime until that event takes place." (*People* v. *Robles, supra*, 117 Cal. at pp. 682-684.)[9]

Although the *Robles* court interpreted the term "deposition" in section 124 to include an "affidavit," the Legislature nonetheless amended section 124 in

every form of written statement. (See code comrs. note, Ann. Pen. Code, *supra*, foll. § 118 at p. 60.)

[9]The delivery requirement, as discussed in *Robles*, has been applied in several subsequent cases. (See *People* v. *Calban* (1976) 65 Cal.App.3d 578, 585, fn. 6 [135 Cal.Rptr. 441] ["[T]he mere making of the affidavit cannot constitute the crime. . . . [I]t is reasonable to require that the affidavit must be delivered to another person with the intent that it be uttered or published as true."]; *People* v. *Hjelm* (1964) 224 Cal.App.2d 649, 651-652 [37 Cal.Rptr. 36] ["When a perjury is claimed to have been committed in a written document such as an affidavit or a deposition, it is requisite to allege and to prove that the document had been completed. Completion is defined by statute to be delivery by the defendant to some other person, with the intent that it be uttered or published as true."]; *People* v. *Agnew* (1947) 77 Cal.App.2d 748, 756 [176 P.2d 724] ["It is not until the verified false statement of the accused leaves the hands of its author that wrong to another is committed and the crime of perjury is complete."]; *People* v. *Darcy* (1943) 59 Cal.App.2d 342, 350 [139 P.2d 118] [". . . the offense is complete upon delivery of the affidavit to another person, with the intent that it be uttered or published as true"], disapproved on other grounds in *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286, 301, fn. 11 [124 Cal.Rptr. 204, 540 P.2d 44].)

1905 to expressly include affidavits. (Stats. 1905, ch. 485, § 4, p. 648.) The statute has not been amended again. Thus, since 1905, the delivery requirement of section 124 has applied to a charge of perjury involving a false "deposition, affidavit or certificate."[10]

In 1955, a second clause was added to section 118 in order to include statements made under penalty of perjury. Interestingly, the words "penalty of perjury" appeared in quotation marks in the revised statute. It read: "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, *and every person who . . . declares . . . or certifies 'under penalty of perjury' in any of the cases in which such . . . declarations . . . or certification is permitted by law under 'penalty of perjury' and willfully states as true any material matter which he knows to be false*, is guilty of perjury." (Stats. 1955, ch. 873, § 2, pp. 1488-1489, italics added.) The same legislation (Assem. Bill No. 1224 (1955 Reg. Sess.)) amended section 446 of the Code of Civil Procedure to permit pleadings to be verified under penalty of perjury, dispensing with the requirement that they be verified under oath. (Stats. 1955, ch. 873, § 1, p. 1488; see Historical Note, 14A West's Ann. Code Civ. Proc. (1973 ed.) § 446, pp. 508-509.) Thus, section 118's initial application to statements made under penalty of perjury was limited to verified pleadings.

In 1956, the State Bar Committee on Administration of Justice recommended that the Legislature expand the permissible use of statements made under penalty of perjury. (See *Selected 1957 Code Legislation* (1957) 32 State Bar J. 501, 567-568.) The committee reported that "[l]ast year the Legislature and Governor gave favorable consideration to a proposal, by others, to permit a *certification* 'under penalty of perjury,' in lieu of the customary appearance and oath, in the verification of a pleading. . . . [¶] . . . [¶] The Federal Government has successfully pioneered the general use of *certifications*, instead of formal subscriptions under oath, in tax matters. Failure to observe the letter of the law, in formalities of execution under

---

[10]The People argue that delivery to another person is not required under section 124 in light of the Supreme Court's statement in *Robles* that "[b]efore a party may be convicted of perjury in making a false affidavit, he must *either* use the affidavit for a purpose contemplated by section 118 of the Penal Code, *or* deliver it to some[one] for such use." (117 Cal. at p. 682, italics added.) We disagree. The gist of the statement in *Robles* is that a false affidavit must be *used by someone for an improper purpose*. The discussion in *Robles* leaves no doubt that, in cases covered by section 124, the accused must deliver the false statement to another person with the intent that it be uttered or published as true. (See 117 Cal. at pp. 682-684.)

oath, is believed to be widespread. Such practice engenders disrespect for the law. In many cases, for technical reasons, it may make prosecution for perjury difficult. [¶] In the opinion of the Committee, therefore, provisions for the use of such *certifications* in our state law generally will accomplish worthwhile streamlining and at the same time eliminate undesirable practices. [¶] The major problem, however, is to draft legislation which will accomplish the change, for litigants and nonlitigants alike, and, at the same time, to preserve the requirements for the appearance and oath in certain special situations." (*Committee Reports—Administration of Justice* (1956) 31 State Bar J. 309, 314, italics added.) The report concluded by saying that, after considering several alternatives, the committee had drafted "a proposed general section to be added to the Code of Civil Procedure . . . ." (*Ibid.*)

On January 17, 1957, a bill to add section 2015.5 to the Code of Civil Procedure and to amend section 118 of the Penal Code (Sen. Bill No. 828 (1957 Reg. Sess.)) was introduced in the Senate and referred to the judiciary committee. (Sen. Final History (1957 Reg. Sess.) p. 345.) In its report, the Senate Judiciary Committee described the purpose of the bill as permitting "[*C*]*ertification* Under 'Penalty of Perjury' in Lieu of Formal Subscription Under Oath." (Sen. Judiciary Com. Rep. (1957), 1 Appen. to Sen. J. (1957 Reg. Sess.) p. 175, italics added.) As the report explained: "The 1955 Legislature adopted an amendment to Code of Civil Procedure Section 446 (also to [Pen. Code] Sec. 118) . . . to permit the use, with respect to verification of pleadings only, of a *certificate* 'under penalty of perjury' in lieu of the customary subscription under oath before an official. As we all know, the Federal Government for a number of years has successfully permitted the use of such *certifications* 'under penalty of perjury' in tax returns. [¶] Failure to observe the requirements of the present law with respect to personal appearance before a notary public or other official in the execution of affidavits generally, seems to be widespread. Such practice causes disrespect for the law, and makes successful prosecution for perjury for wilful misstatements in an affidavit doubtful. [¶] In the opinion of the Committee on Administration of Justice and of the Board of Governors of the State Bar, therefore, an amendment to the law which will permit the use of *certificates* 'under penalty of perjury' in connection with affidavits generally will accomplish a worthwhile streamlining of procedure and at the same time eliminate undesirable practices." (Sen. Judiciary Com. Rep., *supra*, at pp. 175-176, italics added.)

The bill was passed by both houses of the Legislature, and the Governor approved it on July 4, 1957. (Sen. Final History, *supra*, at p. 345.) As

originally enacted, section 2015.5 provided: "Whenever, under any law of this State or under any rule, regulation, order or requirement made pursuant to law, any matter is required or permitted to be evidenced, established, or proved by the sworn statement, declaration, verification, certificate, oath, or *affidavit*, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may with like force and effect be evidenced, established or proved by the unsworn statement, *declaration*, verification, or *certificate*, in writing of such person stating the date and place of execution, and which is subscribed by him and certified or declared by him to be true 'under penalty of perjury,' which certification or declaration may be in substantially the following form: [¶] I certify (or declare) under penalty of perjury that the foregoing is true and correct." (Stats. 1957, ch. 1612, § 1, p. 2959, italics added.) The same bill also amended section 118 by removing the quotation marks from the phrase "penalty of perjury." (Stats. 1957, ch. 1612, § 2, p. 2959.)[11]

Shortly after the passage of the bill, the State Bar Committee on Administration of Justice noted that "[n]ew section 2015.5 of the Code of Civil Procedure is broad in its terms and permits the use of a *certificate* or *declaration* under 'penalty of perjury' (in specified form) in lieu of a sworn statement in many situations." (*Committee Reports—Administration of Justice* (1957) 32 State Bar. J. 349, 353, italics added.) The State Bar pointed out that ". . . California courts have held that a false statement will not constitute perjury unless made under oath . . . . This amendment [adding section 2015.5] . . . permits an unsworn written *certification* 'under penalty of perjury' to be used in all situations where the law permits or requires written statements under oath . . . . This section excludes oaths of office, depositions, and oaths required to be taken before a specified official other than a notary public. Section 2015.5 requires that an unsworn *certification* shall contain a declaration that it is made 'under penalty of perjury.' [¶] . . . [¶] Penal Code § 118 defines perjury to include false material statements, knowingly made, under penalty of perjury." (*Selected 1957 Code Legislation*, *supra*, 32 State Bar. J. at p. 568, italics added, some original italics omitted.)

In light of this statutory history, we reach several conclusions. First, as established in *People* v. *Robles*, *supra*, 117 Cal. 681, the delivery requirement of section 124 constitutes an element of perjury in cases involving a false deposition, affidavit, or certificate.

---

[11]Since 1957, section 2015.5 has been amended several times in ways that are not pertinent here. (See Historical Note, 21-22 West's Ann. Code Civ. Proc., *supra*, § 2015.5, pp. 80-81.) Similarly, the subsequent amendments to section 118 do not concern us. (See Historical Note, 47 West's Ann. Pen. Code (1988 ed.) § 118, pp. 178-179; *id.* (1998 supp. pamp.) § 118, p. 49.)

Second, as the legislative history of section 2015.5 indicates, a statement made under penalty of perjury is a "certificate" within the meaning of section 124. In its report on section 2015.5, the Senate Judiciary Committee repeatedly referred to such a statement as a "certificate" or "certification." (See fn. 4, *ante*.) The State Bar, which drafted section 2015.5, employed the same terminology in its reports and comments on section 2015.5. Further, the term "certificate," as used in its ordinary sense, includes a statement made under penalty of perjury. (See *Cal. Employment Com.* v. *Malm, supra*, 59 Cal.App.2d at p. 324 ["certificate" is " ' "a written testimony to the truth of any fact" ' "]; Black's Law Dict., *supra*, at p. 225, col. 2 ["certificate" is "[a] statement of some fact in a writing signed by the party certifying"].) Moreover, as explained by the code commissioners, the term "certify" in section 118 was intended to be construed broadly, so that "all modes of statement may be clearly included." (Code comrs. note Ann. Pen. Code, *supra*, foll. § 118, at p. 60.) If "certify" is so construed, thereby criminalizing a broad range of conduct under section 118, then "certificate," as used in section 124, should, at a minimum, be interpreted in accordance with its plain meaning to include a statement made under penalty of perjury.

Finally, by operation of section 2015.5, a "declaration"—a statement made under penalty of perjury—is treated as an "affidavit" for purposes of section 124. Section 2015.5 authorizes the use of a declaration instead of an affidavit to register security guards.[12] Under section 2015.5, a declaration has the same "force and effect" as an affidavit. As confirmed by the legislative history, the primary reason for enacting section 2015.5 was to eliminate the formalities associated with the execution of affidavits and to streamline the process for verifying statements. The legislation was premised on the expectation that declarations would be used "in lieu of"—as a legal substitute for—affidavits. The Senate Judiciary Committee and the State Bar concluded that the crime of perjury would be easier to prosecute in cases involving declarations; the formalities of executing an affidavit often were not observed, "mak[ing] successful prosecution for perjury . . . in an affidavit doubtful." (Sen. Judiciary Com. Rep., *supra*, at pp. 175-176; accord, *Committee Reports—Administration of Justice, supra*, 31 State Bar J. at p. 314.) Consequently, it cannot be said that section 2015.5 equates a declaration with an affidavit only in *civil* litigation. On the contrary, the Legislature

---

[12]Section 2015.5 permits the use of a declaration "[w]henever, under any law of this state . . . , any matter is *required or permitted* to be supported . . . by the . . . *affidavit*, in writing of the person making the same . . . ." (Italics added.) A security guard registration form is required by law to be "verified." (Former Bus. & Prof. Code, § 7546.2, added by Stats. 1983, ch. 1196, § 2.5, p. 4574 and repealed by Stats. 1994, ch. 1285, § 5, now Bus. & Prof. Code, § 7583.10, added by Stats. 1994, § 1285, § 6.) To "verify" is to "confirm or substantiate by oath or affidavit." (Black's Law Dict., *supra*, at p. 1561, col. 2.) Accordingly, section 2015.5 allows the Bureau to register security guards by way of a declaration.

enacted section 2015.5 in part because of its impact on criminal prosecutions: "The statute eliminates many of the technicalities and formalities [of executing an affidavit] which made prosecutions for perjury difficult." (*People* v. *Flores*, *supra*, 37 Cal.App.4th at pp. 1572-1573.)

Our conclusions are supported by *People* v. *Pierce* (1967) 66 Cal.2d 53 [56 Cal.Rptr. 817, 423 P.2d 969]. In that case, the defendant had been arrested on a charge of battery. While in custody, he drafted a petition for a writ of habeas corpus, alleging mistreatment by deputy sheriffs during and after his arrest. The petition was addressed to the Los Angeles County Superior Court and began with the attestation, " 'Comes now, I, Clarence L. Pierce, . . . swears to under penalty of perjury, that every statement, contention and accusation stated in this writ, be the whole truth . . . .' " (*Id.* at p. 58.) The defendant signed and dated the petition. He gave it to a deputy sheriff and asked that it be sent to the municipal court (which had no jurisdiction to grant the writ). (*Id.* at pp. 57, 59.) The deputy ignored the defendant's instructions and mailed the petition to the Los Angeles County Superior Court. (*Id.* at p. 57.) The superior court held hearings on the matter, and the defendant eventually dismissed the petition. (*Id.* at pp. 57-58.) Thereafter, the defendant was successfully prosecuted for perjury under section 118 based on false allegations in the petition.

In attempting to overturn his perjury conviction, the defendant made two arguments pertinent to the case before us. First, he claimed that the attestation clause in the petition was not sufficient to constitute a declaration under penalty of perjury because it appeared at the beginning of the petition. In rejecting this argument, the Supreme Court first noted that section 1474 requires a habeas corpus petition to be verified by oath or affirmation. (*People* v. *Pierce*, *supra*, 66 Cal.2d at p. 59.) The court then quoted section 2015.5 for the proposition that a person can use a declaration under penalty of perjury " '[w]henever, under any law . . . any matter is required . . . to be supported . . . by the sworn statement . . . in writing of the person making the same . . . .' " (66 Cal.2d at p. 59, quoting § 2015.5.) The court explained that "[s]ection 2015.5 does not require the declaration under penalty of perjury to appear at the end of the document, although the form suggested in the section contemplates that this is the ordinary placement of the declaration, and it is no doubt the better practice." (*Ibid.*)

As for his second argument, the defendant complained that although he had instructed the deputy sheriff to mail the petition to the municipal court, the deputy had instead mailed it to the superior court. The defendant asserted that if he had known that the deputy was going to send the petition to the

superior court, he might never have permitted it to leave his hands. (*People v. Pierce, supra,* 66 Cal.2d at pp. 59-60.) The high court responded to this argument as follows: "The petition itself stated that the application was made to the superior court, [defendant] appeared before a judge of that court in the habeas corpus proceeding . . . , and the conclusion is warranted that he intended to file the petition in a court which could grant him the relief he sought. Moreover, *section 124 of the Penal Code provides that an affidavit is complete within the meaning of the perjury statutes from the time it is delivered by the accused to any other person, with the intent that it be published as true.*" (*Id.* at p. 60, italics added.) In sum, the Supreme Court found that the defendant had intended to file the petition in the superior court and that the crime of perjury was complete when he handed the petition to the deputy to be mailed.

Thus, in *Pierce,* the court recognized that where section 2015.5 authorizes the use of a declaration in lieu of an affidavit, the crime of perjury is complete when, in accordance with section 124, the defendant delivers the declaration to another person with the intent that it be uttered or published as true. That is the case here. (See fn. 12, *ante.*)

Notwithstanding *Pierce,* the People take refuge in the fact that the trial court relied on CALJIC in instructing the jury on the elements of perjury. (See CALJIC Nos. 7.21, 7.23, 7.24 (6th ed. 1996 bound vol.).) Granted, CALJIC does not provide an instruction on the delivery requirement in perjury cases involving a declaration. However, CALJIC does not provide an instruction on the element of delivery in *any* type of perjury case, even one involving a "deposition, affidavit or certificate"—the three situations expressly covered by section 124. Needless to say, we are not bound by CALJIC in determining whether the jury was properly instructed. (See, e.g., *People v. Beeman* (1984) 35 Cal.3d 547, 555, 560-561 [199 Cal.Rptr. 60, 674 P.2d 1318]; *People v. Spry* (1997) 58 Cal.App.4th 1345, 1363-1372 [68 Cal.Rptr.2d 691].)

Finally, the People contend that a declaration is not the legal equivalent of an affidavit unless it is prepared in connection with some type of litigation, i.e., where there are adverse parties. Plainly, defendant's security guard registration form was *not* created for use in an adversarial proceeding. In support of their contention, the People rely on the definition of "affidavit" in the Code of Civil Procedure: "a written declaration under oath, *made without notice to the adverse party.*" (Code Civ. Proc., § 2003, italics added.) We reject the People's contention for several reasons.

First, in discussing the element of delivery with regard to the crime of perjury, the Supreme Court has not employed the narrow code definitions of "affidavit" or "deposition." (*People* v. *Robles, supra,* 117 Cal. at p. 683; see fn. 8, *ante.*) Second, numerous cases have recognized that "affidavits" are used in nonadversarial settings and that a false statement in such an affidavit can support a conviction for perjury. (See, e.g., *People* v. *Ziady* (1937) 8 Cal.2d 149 [64 P.2d 425, 108 A.L.R. 1234] [reversing dismissal of perjury charge where defendant had submitted allegedly false affidavit to obtain welfare benefits]; *People* v. *Darcy, supra,* 59 Cal.App.2d 342 [affirming perjury conviction where defendant had submitted false affidavit in order to register to vote]; *People* v. *Torterice* (1924) 66 Cal.App. 115 [225 P. 760] [affirming perjury conviction where defendant had submitted false affidavit to obtain marriage license].) Further, in *People* v. *Torterice, supra,* 66 Cal.App. 115, the defendant challenged his perjury conviction on the ground that "the making of a false affidavit . . . is not a public offense, except when intended to be used in a court proceeding." (*Id.* at p. 119.) We rejected that narrow interpretation of section 118. (66 Cal.App. at p. 119) Moreover, section 2015.5—which accords a declaration the same "force and effect" as an affidavit—was drafted to benefit "litigants and nonlitigants alike." (*Committee Reports—Administration of Justice, supra,* 31 State Bar J. at p. 314.)

In short, because a security guard registration form constitutes a "certificate" under section 124 and, alternatively, because section 2015.5 equates a "declaration" with an "affidavit" for purposes of section 124, the People had to prove that defendant delivered the completed registration form to someone with the intent that it be uttered or published as true.

B.-D.*

. . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed with respect to the trial court's determination that defendant's prior conviction in the State of Missouri for attempted robbery is a strike under the Three Strikes law (Pen. Code, §§ 667, subd. (d)(2), 1170.12, subd. (b)(2)). Defendant's sentence is vacated and the

---

*See footnote, *ante,* page 581.

matter is remanded to the trial court for further proceedings with regard to resentencing. In all other respects, the judgment is affirmed.

Ortega, Acting P. J., and Dunn, J.,* concurred.

A petition for a rehearing was denied July 31, 1998.

---

*Judge of the Municipal Court for the Long Beach Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.