[No. B094292. Second Dist., Div. Six. Dec. 23, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
TINA ANN FLORES, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion deleted from publication are indentified by double brackets, e.g., [[/]] at the point of omission.

## COUNSEL

Michael B. Dashjian, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Kyle S. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, J.**—A driver is involved in an accident causing injury to another. She stops but leaves the accident scene without providing identification as required by Vehicle Code[1] sections 20001 and 20003. When she is arrested several days later, she claims she was unconscious until after the accident scene cleared.

We hold that a driver who is unconscious at the scene of an injury accident may violate sections 20001 and 20003 if she fails to provide identifying information as soon as reasonably possible after regaining consciousness.

We also hold that section 40000.13 does not preclude a felony conviction under section 20001 for the driver involved in an injury accident who stops at the scene but who fails to perform the duties required by section 20003. We affirm Flores's felony conviction under section 20001.

### FACTS

Defendant, Tina Ann Flores, was with Troy Allen at Neptune's Net, a restaurant and bar on the Pacific Coast Highway in Ventura County. Robert Boomhower, known as "Yo Bob," was also there.

---

[1] All further references are to the Vehicle Code unless otherwise specified.

About 4 p.m. Flores and Allen left Neptune's Net. Flores got into the driver's seat of Allen's Corvette. Allen got into the passenger seat. A restaurant patron, Tom Evans, saw Boomhower get close to the Corvette and wave his hands. Evans interpreted this gesture as signaling for a "burn-out."

Flores backed up, pulled onto the highway and hit the accelerator hard. She skidded out of control and came to a stop across the double yellow line in a south bound lane. Unfortunately, at the same time, Ariel Luna was traveling south along the highway in his BMW. Luna never saw the Corvette until just before the crash. Luna suffered a broken nose, broken gums and injuries to his hip, shoulder and back.

After the accident, Flores was unconscious with her head resting on the steering wheel. Bystanders estimated that Flores was unconscious from one to six minutes. Eventually Flores said she wanted to get out of the car. Either Allen or Evans helped her out.

Allen and Boomhower returned to the restaurant. Flores followed momentarily, then Evans. Near the restaurant refrigerators, Evans told Flores, "What you need is some water." Flores did not say anything, but agreed with Evans. He got her some water, and told her that she needed to return to the scene of the accident to tell her side of the story. Flores replied that she did not know what had happened.

Evans told Flores that she had been in an accident and that she needed to return to the scene. Flores told Evans that he did not understand. She said she had to go to the bathroom. Although Evans believed Flores understood what he was saying, he could not understand what she was saying.

Evans and Flores left the restaurant. Allen was outside standing next to Boomhower's truck. Allen had offered Boomhower $1,000 to drive him away from the scene. Flores got into the truck and Boomhower drove both Allen and Flores away.

Five days after the accident, California Highway Patrol Officer Randy Pickens saw Flores driving a van with Allen in the passenger seat. The back of the van contained seven or eight boxes, including suitcases, some women's clothing and household items.

Pickens handcuffed Flores and put her in the police car. Pickens told her he was not going to talk to her about the accident because he did not know anything about it. Flores asked Pickens how she could get back her property

from the van. Pickens said she would have to talk to Allen. Then Pickens commented that "it looked like she had everything in there except the kitchen sink." She said she was going home. Pickens asked where home was and she said Mexico.

Flores testified in her own defense. She said she recalled getting into the car and pressing the accelerator too hard. But she did not recall the accident, regaining consciousness at the scene, walking up to the restaurant afterwards, or leaving with Allen. She said the next thing she remembered was driving with Allen later that night. She thought she was close to her home in Thousand Oaks, but Allen told her they were in Orange County. They spent that night at Rosarito Beach in Mexico. Allen told her she had been in an accident. Allen's statement did not refresh her memory, but she believed him because her head hurt.

The next day Flores and Allen drove to Ventura where they stayed on a friend's boat for a few days. Allen told her that there had been another car involved in the accident and someone might be very badly hurt or even dead. She testified she wanted to call the police, but she was afraid and wanted to talk to an attorney first.

Flores's father testified she called him two days after the accident. She told him she had been in an accident, wanted to know what injuries the other person had sustained and wanted to know what to do.

On cross-examination Flores denied remembering telling Evans, "You just don't understand" when Evans suggested she return to the accident scene. She admitted, however, that she was still married, although separated, and that Allen had a live-in girlfriend.

DISCUSSION

I

Over Flores's objection, the trial court allowed the prosecutor to argue that Flores could be convicted of violating section 20001 even if she was unconscious at the scene of the accident. The prosecutor's theory was that even if Flores was unconscious at the scene of the accident, she had the duty to identify herself after she regained consciousness.

Flores contends it was error to allow the prosecutor's argument. She argues that section 20001 requires her to perform the duties specified in section 20003 only at the scene of the accident. She claims she was relieved

of her obligations under section 20001 because she remained unconscious until after the accident scene was cleared.

Section 20001, subdivision (a) provides in part, "The driver of any vehicle involved in an accident resulting in injury to any person, other than himself or herself, . . . shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Section[] 20003 . . . ."

Section 20003, subdivision (a) provides in part: "The driver of any vehicle involved in an accident resulting in injury to or death of any person shall also give his or her name, current residence address, the names and current residence addresses of any occupant of the driver's vehicle injured in the accident, the registration number of the vehicle he or she is driving, and the name and current residence address of the owner to the person struck or the driver or occupants of any vehicle collided with, and shall give the information to any traffic or police officer at the scene of the accident. The driver also shall render to any person injured in the accident reasonable assistance . . . ."

Section 20001 requires a driver involved in an injury accident to do two things: stop and fulfill the requirements of section 20003. Neither statute expressly limits the time or place for fulfilling the requirements of section 20003 to the scene of the accident. We must give penal statutes a reasonable and commonsense construction. (*People* v. *Malcolm* (1975) 47 Cal.App.3d 217, 222 [120 Cal.Rptr. 667].) Implicit in both statutes is the obligation of the driver to fulfill their requirements as soon as reasonably possible.

If a driver is unconscious, obviously she will not be able to comply with the requirements of section 20003 at the scene of the accident. Nevertheless, the literal terms of the statute apply to the unconscious driver. (See *People* v. *Scofield* (1928) 203 Cal. 703, 708 [265 P. 914].) The reason the unconscious driver is excused from performing under the statute is that the law does not require the impossible. (*Ibid.*) When the driver regains consciousness, compliance is no longer impossible and she must comply with the disclosure requirements of the statute as soon as reasonably possible.

Flores relies on section 40000.13, subdivision (b). That subdivision describes section 20003 as "relating to duties at accidents." The words Flores relies on, however, were only intended as a general description. The words were not intended to indicate that under all circumstances the duties contained in section 20003 were limited to the scene of the accident.

Flores also relies on *People* v. *Mayo* (1961) 194 Cal.App.2d 527 [15 Cal.Rptr. 366]. In *Mayo* the court stated that there was no evidence the

defendant knew another car was wrecked in the accident or knew that other people were injured in the accident; nor was there any evidence as to what the defendant "could or should have seen under the nighttime conditions there present." (*Id.* at pp. 535-536.) The court concluded there was insufficient evidence to support the verdict. (*Id.* at p. 536.)

The court went on to say that it was unable to account for the verdict except on the theory the jury misunderstood the instructions. The court concluded that failure to give the instructions requested by the defendant was prejudicial. (*People* v. *Mayo, supra,* 194 Cal.App.2d at p. 537.) One of the instructions requested by the defendant was "[I]f a defendant's mental condition at the scene of the collision is such that he is unable to know what is going on or what has occurred, he cannot be found guilty." (*Id.* at p. 536.)

Flores emphasizes that the requested instruction in *Mayo* referred to the defendant's mental condition "at the scene of the collision." But *Mayo* is distinguishable. The *Mayo* court's discussion of the evidence makes it clear there was no substantial evidence that the defendant had the knowledge requisite for conviction even if he was conscious at the scene of the accident. Having concluded there was no substantial evidence to support the verdict, the court's further discussion on what instructions should have been given was dicta. Moreover, the court did not consider the question whether a driver who is unconscious at the scene of the accident has a duty to identify herself after the accident scene is cleared. **(2)** A case is not authority for matters not discussed. (*Contra Costa Water Dist.* v. *Bar-C Properties* (1992) 5 Cal.App.4th 652, 660 [7 Cal.Rptr.2d 91].)

In *People* v. *Scofield, supra,* 203 Cal. 703, the court held that the defendant was excused from identifying himself to the driver of the other car because of the driver's unconscious condition. There the driver remained unconscious from the time of the accident until his death. The court did not discuss the defendant's duty to identify himself to the driver had the driver regained consciousness after the accident scene cleared.

In *People* v. *Campbell* (1958) 162 Cal.App.2d 776, 786 [329 P.2d 82], the court stated, "We do not doubt that the jurors understood they were to acquit Campbell . . . if they believed his testimony respecting his mental incapacity." But Campbell's testimony was that his first recollection after the accident was of being in jail. The court did not discuss the defendant's duty to identify himself after he regained consciousness, presumably because he was already in jail as a result of the accident. In fact, neither party cites any case that considers the precise question we face here.

## II

Flores contends that due process and ex post facto considerations prevent our interpretation of her postaccident duties under section 20001 from being applied to her. The contention is based on the theory that sections 20001 and 20003 have long been interpreted as applying only to the scene of the accident. But there is nothing in the sections that so limits the duty of the driver to identify herself, and Flores has cited no case that holds the statutes are so limited. The notion that Flores did not have adequate warning her conduct was criminal is unsupported.

[[/]]*

## III

Flores argues that because she stopped at the scene of the accident she cannot be charged with a felony violation of section 20001. She believes the most she can be charged with is a violation of section 20003, a misdemeanor.

Section 20001, subdivision (b)(1) provides that in the case of injury not resulting in death, violation of the section is either a felony or a misdemeanor; that is, a "wobbler." Section 40000.13 provides, however, that violation of section 20003 is a misdemeanor "and not an infraction." Because it is not possible to violate section 20003 without also violating section 20001, it is difficult for Flores to see how a violation of section 20001 can be a felony when it is based on a violation of section 20003, a misdemeanor.

Flores suggests that the only way to harmonize all the statutes is to construe them literally. She concludes that a driver who immediately stops at the scene of the accident, but who fails to comply with section 20003, is guilty only of a misdemeanor. She believes it is only where the driver both fails to stop and comply with section 20003 that a "wobbler" can be charged.

But the literal construction of section 20001 requires that a driver involved in an injury accident both stop immediately and comply with section 20003. To avoid violating section 20001, it is not enough for the driver simply to stop. Thus the driver who stops without complying with section 20003 can be charged with a felony under section 20001.

No case has ever held that the hit-and-run statute is satisfied by stopping alone. (See, e.g., *People* v. *De Winter* (1962) 210 Cal.App.2d 173, 175-176

---

*See footnote, *ante,* page 1199.

[26 Cal.Rptr. 386].) Flores points out, however, that cases supporting the People's position were decided prior to the enactment of section 40000.13. That may be true, but the dual requirements of section 20001, stopping and compliance with section 20003, show that stopping alone is still not enough. Nothing in section 40000.13 can be construed as limiting the prosecutor's discretion to charge a felony under section 20001. Section 40000.13 does not even mention section 20001.

It is true, that in order to comply with section 20003, a driver must stop. This makes section 20003 remarkably similar, if not identical, to section 20001. This merely gives the prosecutor an option as to which statute to charge. This, in turn, would presumably depend on the facts of the particular case.

## [[IV]]*

The judgment is affirmed.

Stone (S. J.), P. J., and Yegan, J., concurred.

A petition for a rehearing was denied January 22, 1997, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 2, 1997. Mosk, J., and Chin, J., were of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 1199.