Filed 4/29/13  P. v. Vega CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GUSTAVO ADRIAN VEGA,<br><br>    Defendant and Appellant. | G045951<br><br>(Super. Ct. No. 10HF0233)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge.  Affirmed.

Law Offices of E. Thomas Dunn, Jr., and E. Thomas Dunn, Jr., for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Gary W. Brozio, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

While driving his truck under the influence of alcohol, defendant Gustavo Adrian Vega sped through a red light, and collided with a car in an intersection, killing the passenger in the car. Defendant was convicted by a jury of murder, felony hit and run, and possession of a controlled substance. We affirm.

On appeal, defendant argues there was insufficient evidence supporting his convictions for murder and felony hit and run. Substantial evidence supports those convictions.

Defendant also argues the trial court erred by failing to instruct the jury on the defense of duress. That defense was not applicable to the murder charge, and there was not substantial evidence to support the defense on felony hit and run. Accordingly, there was no error in failing to instruct the jury on duress.

Defendant next argues the trial court erred under Penal Code section 1138, when it answered the jury's question during deliberations regarding the defense of necessity. We find no error in the court's response to the jury's question.

Finally, we reject defendant's argument that the trial court should have instructed the jury that gross vehicular manslaughter while intoxicated is a lesser included offense of murder. The Supreme Court has definitively decided against defendant on this point of law. We further reject defendant's contention that Penal Code section 192, subdivision (b) violates equal protection; there is a rational basis for not permitting involuntary manslaughter to be raised as a lesser included offense to murder if death results from driving a motor vehicle in an unlawful manner.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Around 2:30 a.m. on February 14, 2010, a truck driven by defendant ran a red light and crashed into a car driven by Hao Nguyen. Cara Lee, who was in the front passenger seat of Nguyen's car, died of exsanguination due to multiple traumatic injuries.

Before the collision, while exiting a restaurant parking lot, defendant's truck had bumped into a car belonging to Todd Highman. Maricela Sandoval, Highman's girlfriend, tried to confront defendant and two others who were in the truck, but they ignored her and sped off. Sandoval went inside the restaurant to let Highman know what had happened. They got back in the car and drove after defendant's truck. After losing sight of defendant's truck, they spotted the truck as it emerged from a nearby neighborhood; Highman honked, but defendant failed to stop. Highman pulled up beside defendant's truck at a red light, made eye contact with defendant, and gestured to him to pull over so they could exchange insurance information. Instead, defendant sped off when the light turned green. Highman and Sandoval both denied threatening defendant. Moments later, the crash with Nguyen's car occurred.

After the crash, defendant exited his truck and fled into a nearby apartment complex. When a police officer located defendant, the officer found a baggie of cocaine on him. Another officer conducted a drunk driving investigation and noticed defendant showed signs of alcohol intoxication. Defendant's preliminary alcohol screening tests showed blood alcohol levels of 0.17 and 0.18 percent. The officer opined, based on defendant's performance on the field sobriety test and the results of his preliminary alcohol screening tests, that defendant was under the influence of alcohol.

After defendant was arrested, his blood was drawn. Defendant's blood alcohol level was 0.174 percent, and tests also showed the presence of cocaine in his system.

At no point during the postaccident investigation did defendant tell the police he was speeding because he was in fear for his life.

Using information obtained at the scene, as well as information from the "black box" in defendant's truck, an accident reconstruction expert testified that defendant's truck's speed at the time of impact with Nguyen's car was between 61 and 64 miles per hour, and that its speed during the moments before impact could have been as

high as 81.6 to 88.3 miles per hour. The police determined that the traffic lights at the intersection where the collision occurred were working properly.

Defendant had previously pled guilty to driving while under the influence of alcohol. On February 14, 2010, he was on probation for that conviction, and his driver's license was suspended. In connection with his earlier conviction for driving while under the influence of alcohol, defendant had attended and completed a youth drug and alcohol deterrence program. The program informed defendant of the dangers associated with and the legal consequences of drinking and driving. As part of that program, defendant had written an essay describing his earlier crime, what he had learned, and how he would change his life based on the whole experience. Defendant had also attended and completed a Mothers Against Drunk Driving victim impact panel. After completing those education programs, as part of his guilty plea, defendant initialed a paragraph reading as follows: "You are hereby advised that being under the influence of alcohol or drugs or both impairs your ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs or both. If you continue to drive while under the influence of alcohol or drugs or both, and as a result of that driving, someone is killed, you can be charged with murder."

At trial, defendant testified in his own defense. He admitted ingesting cocaine, drinking alcohol, and smoking marijuana during the evening of February 13, 2010. Around 1:30 a.m. on February 14, defendant and two friends drove to a taco shop in Santa Ana. One of defendant's friends and a security guard at the taco shop told him Sandoval said he had hit Highman's car, but defendant denied hitting the car.

Defendant testified that, after he dropped off his friends, he noticed he was being closely followed by a white car. Defendant said he sped up to get away from the car, but it kept pace with his truck. When he stopped at a red light, the white car pulled up beside his truck; defendant could see the driver and front seat passenger making hand

4

gestures, but could see nothing else. Defendant testified he believed he was being followed by gang members and was scared. In 2008, defendant's brother had been involved in an incident where gang members followed him, pulled him from his vehicle, and beat him up.

When the red light turned green, defendant sped away. He claimed that he slowed as he approached the intersection of Flower Street and Sunflower Avenue because the light was red. Defendant also claimed that the light turned green so he drove into the intersection. Defendant's truck collided with a car in the intersection and he blacked out. When he came to, he saw the white car, panicked, and walked across the street and jumped over a fence into an apartment complex. Defendant claimed he told the police officer who initially contacted him that he was being chased.

Defendant testified that he appreciated the dangers of drinking and driving, and that he would not have been speeding that night but for his fear of the person or persons in the white car.

A clinical psychologist testified for the defense that defendant was in a fight or flight syndrome situation at the time of the collision. During an interview with the psychologist, defendant claimed he was in fear for his life because the white car was chasing him, the driver of the white car was making wild gestures, and he feared the car contained gang members. Defendant told the psychologist that he ran the red light at the intersection because he believed gang members were chasing him.

Defendant was charged with murder (Pen. Code, § 187, subd. (a)); misdemeanor hit and run driving with property damage (Veh. Code, § 20002, subd. (a)); felony hit and run driving with permanent injury or death (*id.*, § 20001, subds. (a), (b)(2)); and felony possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)). A jury found defendant not guilty of misdemeanor hit and run driving, but guilty of all the other charges.

5

The trial court denied defendant's motion for a new trial, made on the ground the jury should have been permitted to consider grossly negligent vehicular manslaughter as a lesser included offense of murder. The court sentenced defendant to a total of 20 years four months to life; defendant was sentenced to 15 years to life for murder, with consecutive sentences of four years for felony hit and run driving, and eight months for possession of a controlled substance.[1] Defendant timely appealed.

DISCUSSION

I.

*SUFFICIENCY OF THE EVIDENCE*

Defendant argues there was not sufficient evidence to support the charges of murder and felony hit and run. "'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.) We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We may reverse for lack of substantial evidence only if "'"upon no hypothesis whatever is there sufficient substantial evidence to support"'" the conviction. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

A.

*Murder*

Defendant concedes there was sufficient evidence that he committed an act which caused the death of another person, and he acted with malice aforethought by

---

[1] Defendant was also sentenced to a total of eight months for prior crimes as to which he was on probation on February 14, 2010.

driving at unlawful speeds.  (Defendant does not acknowledge that, while driving at unlawful speeds, he was also under the influence of alcohol, marijuana, and cocaine; was driving without a license due to a previous conviction for driving while under the influence of alcohol; and had attested that after taking classes on the subject, he understood he could cause a person's death by drinking and driving.)  Defendant argues, however, there was insufficient evidence that he acted without lawful excuse, a necessary element of the crime of murder.  (*People v. Thomas* (2007) 150 Cal.App.4th 461, 466-467; CALCRIM No. 520.)[2]  Defendant's defense of excuse is based on his claim that he

_____

[2] The jury was correctly instructed with CALCRIM Nos. 500, 510, and 520, as follows:  "Homicide is the killing of one human being by another.  Murder is a type of homicide.  The defendant is charged with murder.  [¶] A homicide can be lawful or unlawful.  If a person kills with a legally valid excuse or justification, the killing is lawful and he or she has not committed a crime.  If there is no legally valid excuse or justification, the killing is unlawful and, depending on the circumstances, the person may be guilty of murder.  You must decide whether the killing in this case was unlawful and, if so, whether murder was committed.  [¶] I will now instruct you in more detail on what is a legally permissible excuse or justification for homicide."  (CALCRIM No. 500.)  "The defendant is not guilty of murder if he killed someone as a result of accident or misfortune.  Such a killing is excused and, therefore, not unlawful, if:  1, the defendant was doing a lawful act in a lawful way; 2, the defendant was acting with usual and ordinary caution; and 3, the defendant was acting without any unlawful intent.  [¶] A person acts with usual and ordinary caution if he or she acts in a way that a reasonably careful person would act in the same or similar situation.  [¶] The People have the burden of proving beyond a reasonable doubt that the killing was not excused.  If the People have not met this burden, you must find the defendant not guilty of murder."  (CALCRIM No. 510.)  "The defendant is charged in count 1 with murder in violation of Penal Code section 187.  [¶] To prove that the defendant is guilty of this crime, the People must prove that:  1, the defendant committed an act that caused the death of another person.  That's number 1.  Number 2, when the defendant acted, he had the state of mind called malice aforethought; and 3, he killed without lawful excuse.  [¶] Malice aforethought may be implied malice.  [¶] A defendant acted with implied malice if:  1, he intentionally committed an act; 2, the natural and probable consequences of the act were dangerous to human life; 3, at the time he acted, he knew his act was dangerous to human life; and 4, he deliberately acted with conscious disregard for human life.  [¶] Malice aforethought does not require hatred or ill will toward the victim.  It is a mental state that must be formed before the act that causes death is committed.  It does not require deliberation or the passage of any particular period of time.  [¶] If you find the defendant

7

reasonably believed the occupants of the white car were gang members who were chasing him, and to protect his own safety, his only reasonable response was to speed away.

On February 14, 2010, defendant was driving without a valid license, had been drinking, and had ingested marijuana and cocaine. He was also in possession of cocaine. Defendant was aware that a woman in the restaurant parking lot claimed defendant's truck had hit her car, although the security guard had told him there was no damage to the car. Soon thereafter, a white car began following defendant's truck, and pulled up next to his truck at a red light. The occupants of the white car were gesturing to defendant to pull over, and both Highman and Sandoval denied under oath that they were in any way threatening defendant. Highman testified he made eye contact with defendant before defendant sped off. No evidence was presented that the occupants of the white car were gang members, wearing gang clothing, flashing gang signs, or issuing gang challenges.[3] Before the collision, defendant's truck reached speeds of as high as 88 miles per hour. Afterwards, defendant fled the scene. None of the police officers who testified at trial had been told by defendant, on the night of his arrest, that he was afraid, he was being chased by gang members, or he had been speeding to avoid danger. More than sufficient evidence was admitted at trial showing there was no lawful excuse or justification for the killing of Cara Lee, and, therefore, there was sufficient evidence supporting defendant's conviction for murder.

---

guilty of murder, it is murder of the second degree." (CALCRIM No. 520.) As explained, *post*, the jury was also correctly instructed with CALCRIM No. 3403, regarding necessity as a defense to murder.

[3] Defendant contends that "[t]he fact that this area is dangerous gang territory is common knowledge, not only among those in the legal world but in the community at large, and a fact of which the court could easily take judicial notice." Defendant did not ask the trial court to take judicial notice of this supposed fact, and no evidence was presented to the jury that the area in which defendant was approached by the white car is "dangerous gang territory."

B.

*Hit and Run Driving Resulting in Death*

Defendant argues there was insufficient evidence to support his conviction for violating Vehicle Code section 20001. CALCRIM No. 2140, which addresses violations of section 20001, was read to the jury as follows: "The defendant is charged in count 3 with failing to perform a legal duty following a vehicle accident that caused the death of another person in violation of Vehicle Code section 20001 subdivision (a) [and] subdivision (b) subdivision (2). [¶] To prove that the defendant is guilty of this crime, the People must prove that: 1, while driving, the defendant was involved in a vehicle accident; 2, the accident caused the death of someone else; 3, the defendant knew that he had been involved in an accident that injured another person or knew from the nature of the accident that it was probable that another person had been injured; and, 4, the defendant willfully failed to perform one or more of the following duties: to stop immediately at the scene of an accident; to provide reasonable assistance to any injured person in the accident; to give to the driver or occupants of any vehicle collided [with] or any police officer at the scene of the accident all of the following information: the defendant's name and current residence address; the registration number of the vehicle he was driving; and the driver must, without unnecessary delay, notify the police department of the city where the accident happened."

Defendant does not dispute that he was involved in a collision, which caused the death of Cara Lee, and knew from the nature of the collision that it was probable someone else had been injured. Defendant contends he substantially complied, or was excused from complying, with the statutory requirements to provide assistance and to provide necessary information to the other vehicle's driver and occupants and to the police, based on his testimony that he was dazed and in a state of shock after the collision. (*People v. Flores* (1996) 51 Cal.App.4th 1199, 1204 [unconscious driver is excused from performing obligations under Vehicle Code section 20001 until he or she

9

regains consciousness].) Defendant contends he ran only far enough away to escape notice of the occupants of the white car, and cooperated with the police as soon as they arrived.

As explained *ante* in part I.A. of the Discussion, the evidence was sufficient to support the reasonable inferences that defendant did not believe he was being followed by gang members, he fled the scene of the collision as he had fled the scene of his minor fender bender earlier, he displayed a consciousness of guilt when he fled the scene of the collision, and he never told the police he was in fear for his life. These inferences amply support the conviction for felony hit and run driving.

## II.

### *FAILURE TO INSTRUCT ON DEFENSE OF DURESS*

Defendant argues the trial court failed its sua sponte duty to instruct the jury on the defense of duress. A court has a sua sponte duty to instruct the jury on a defense if there is substantial evidence to support the defense, and if it is not inconsistent with the defendant's theory of the case. (*People v. Wilson* (2005) 36 Cal.4th 309, 331.)

CALCRIM No. 3402 provides as follows: "The defendant is not guilty of _____ *<insert crime[s]>* if (he/she) acted under duress. The defendant acted under duress if, because of threat or menace, (he/she) believed that (his/her/ [or] someone else's) life would be in immediate danger if (he/she) refused a demand or request to commit the crime[s]. The demand or request may have been express or implied. [¶] The defendant's belief that (his/her/ [or] someone else's) life was in immediate danger must have been reasonable. When deciding whether the defendant's belief was reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in the same position as the defendant would have believed. [¶] A threat of future harm is not sufficient; the danger to life must have been immediate. [¶] [The People must prove beyond a reasonable doubt that the defendant did not act under duress. If the People have not met this burden, you must find the defendant

10

not guilty of _____ *<insert crime[s]>*.]  [¶] [This defense does not apply to the crime of _____ *<insert charge[s] of murder; see Bench Notes>*.]"  (Boldface omitted.)

We conclude the trial court did not have a sua sponte duty to instruct the jury that duress was a defense.  With respect to the charge of murder, "duress is not a defense to any form of murder."  (*People v. Anderson* (2002) 28 Cal.4th 767, 780.)[4] With respect to the charge of felony hit and run driving, the duress defense is inapplicable because "[a]n essential component of this defense is that the defendant be faced with a direct or implied demand that he or she commit the charged crime."  (*People v. Saavedra* (2007) 156 Cal.App.4th 561, 567.)  In this case, even if defendant's fear of the threat posed by the occupants of the white car was reasonable, there is no evidence that he faced a direct or implied demand to commit the crime of running from the scene of the collision without rendering assistance or providing necessary information.  Therefore, the duress defense was not applicable in this case, and the trial court had no sua sponte duty to provide an instruction on the defense to the jury.  For this reason, we also reject defendant's contention that his trial counsel was ineffective for failing to request an instruction on the duress defense, or to argue it in closing argument.

III.

*RESPONSE TO JURY'S QUESTION ON NECESSITY*

Defendant argues he was prejudiced by the trial court's response to a jury question regarding the necessity defense.

The trial court instructed the jury on the defense of necessity with CALCRIM No. 3403:  "The defendant is not guilty of murder, hit and run with death, or hit and run with property damage if he acted because of legal necessity.  [¶] In order to establish this defense, the defendant must prove that:  1, he acted in an emergency to

---

[4] Although "duress may negate the deliberation or premeditation required for first degree murder" (*People v. Burney* (2009) 47 Cal.4th 203, 249), that issue is not presented by the facts of this case.

11

prevent a significant bodily injury or evil to himself; 2, he had no adequate legal alternative; 3, the defendant's act did not create a greater danger than the one avoided; 4, when the defendant acted, he actually believed that the act was necessary to prevent the threatened harm or evil; 5, a reasonable person would also have believed that the act was necessary under the circumstances; and [6] the defendant did not substantially contribute to the emergency. [¶] The defendant has the burden of proving this defense by a preponderance of the evidence. This is a different standard of proof than proof beyond a reasonable doubt. To meet this burden by a preponderance of the evidence, the defendant must prove that it is more likely than not that each of the six listed items is true."

During deliberations, the jury sent out a note, reading as follows: "We, the jury in the above entitled action, request the following: [¶] Clarification of the word 'emergency' in '3403 Necessity' as it pertains to hit & run w/ Death in questions #1 and #6 [¶] Is the 'emergency' the imminent threat of bodily harm or the car crash?" In response, the court reinstructed the jury with CALCRIM No. 200, as follows: "Some words or phrases used during this trial have legal meanings that are different from their meanings in everyday use. These words and phrases will be specifically defined in these instructions. Please be sure to listen carefully and follow the definitions that I give you. Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings. [¶] The word 'emergency' fits into that last sentence. So it is not specifically defined and you are to apply it using the ordinary, everyday meaning."

Defendant did not object to the trial court's response to the jury's question; any claim of error has therefore been forfeited. (*People v. Dykes* (2009) 46 Cal.4th 731, 798-799 [on appeal, the defendant cannot challenge court's response to jury question, under Penal Code section 1138, when response was correct under the law and was

12

approved by defense counsel].) However, to resolve defendant's claim of ineffective assistance of counsel, we will proceed to the merits of the argument.

Penal Code section 1138 provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called." This statute "imposes on the court the 'primary duty to help the jury understand the legal principles it is asked to apply.' [Citation.]" (*People v. Cleveland* (2004) 32 Cal.4th 704, 755.)

The jury's question was limited to the application of the necessity defense to the crime of felony hit and run driving with permanent injury or death. When understood properly, the jury's question makes sense, and the trial court's response was entirely appropriate. There was no error; but even if there was, it would be harmless. The evidence that defendant committed felony hit and run driving resulting in death was overwhelming, as described *ante* in part I.B. of the Discussion.

IV.

*REFUSAL TO INSTRUCT THE JURY THAT GROSS VEHICULAR MANSLAUGHTER WHILE INTOXICATED IS A LESSER INCLUDED OFFENSE OF MURDER*

Defendant argues the trial court erred by failing to instruct the jury that gross vehicular manslaughter while intoxicated was a lesser included offense of murder in this case. As defendant acknowledges, however, the California Supreme Court has explicitly held that gross vehicular manslaughter while intoxicated is not a lesser included offense of murder because the statutory elements of murder do not include all the elements of gross vehicular manslaughter while intoxicated. (*People v. Sanchez* (2001) 24 Cal.4th 983, 989.)

13

Defendant also argues that Penal Code section 192, subdivision (b) violates equal protection because it eliminates involuntary manslaughter as a lesser included offense to murder in homicide cases where the defendant is driving under the influence of alcohol. A state statute may violate equal protection when it treats similarly situated persons in an unequal manner; a defendant making an equal protection claim bears the burden of establishing the violation. (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836.) Criminal classifications determining different levels of culpability do not implicate strict scrutiny for equal protection purposes. (*Id.* at p. 838.) Therefore, even if Penal Code section 192 creates a different classification, it only needs to bear a rational relationship to a legitimate governmental purpose. (*People v. Wilkinson*, *supra*, at p. 836.) The California Legislature has consistently attempted to control the serious and often deadly damage caused by drivers impaired by alcohol or drugs. (See *Burg v. Municipal Court* (1983) 35 Cal.3d 257, 261-262, 273, fn. 21 [laws restricting driving while under the influence of alcohol or drugs further valid legislative purpose, and do not violate equal protection]; *People v. Davalos* (1987) 192 Cal.App.3d Supp. 10, 14 [protecting members of the public from those driving while impaired is valid legislative goal].) Accordingly, contrary to defendant's argument, there is a rational basis for permitting involuntary manslaughter to be raised as a lesser included offense to murder if death occurs as a result of the use of a chain saw, but not if death occurs as a result of driving a motor vehicle in an unlawful manner. Additionally, defendant's argument entirely ignores the presence of Penal Code section 192, subdivision (c), which specifically addresses vehicular manslaughter.

V.

*INEFFECTIVE ASSISTANCE OF COUNSEL*

Defendant claims he received ineffective assistance from his trial counsel. To prevail on a claim of ineffective assistance of counsel, defendant must prove both (1) his attorney's representation was deficient in that it fell below an objective standard of

14

reasonableness under prevailing professional standards, and (2) his attorney's deficient representation subjected him to prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Cain* (1995) 10 Cal.4th 1, 28.) Prejudice means a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington, supra,* at p. 694.) A reasonable probability means a "probability sufficient to undermine confidence in the outcome." (*Ibid.*) "'"[W]e accord great deference to counsel's tactical decisions" [citation], and we have explained that "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation]. "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts."'" (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.) "Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' [Citations.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 746.) We reverse on direct appeal for ineffective assistance of counsel only when "the record on appeal demonstrates there could be no rational tactical purpose for counsel's omissions." (*People v. Lucas* (1995) 12 Cal.4th 415, 442.)

In this case, defendant can prove neither of the two prongs of the *Strickland v. Washington* test. As explained *ante,* defendant's trial counsel was not deficient for failing to argue a duress defense because such a defense was not available as a matter of law. Defendant also argues his counsel's representation was deficient by failing to convincingly argue the defense of necessity. Defendant's counsel, in fact, argued that defendant's speeding was due to his fear that the white car contained gang

15

members, and that his fear was reasonable. Finally, defendant contends his trial counsel's closing argument was inadequate. Having reviewed the transcript of counsel's argument, we disagree. Defendant's trial counsel focused on inconsistencies in the testimony of Highman, Sandoval, and the officers at the scene, and on the undisputed testimony that defendant was driving at a normal rate of speed until he encountered Highman's car. Defendant's counsel also emphasized the burden of proof, and the prosecution's need to prove conscious disregard for human life, and argued that the fight or flight response testified to by the expert witness meant defendant did not have a conscious disregard for human life. That the jury did not accept defendant's counsel's argument does not mean it was deficient.

DISPOSITION

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.

16