Filed 1/31/14  P. v. Jones CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>GEORGE LEE JONES,<br><br>        Defendant and Appellant. | C068316<br><br>(Super. Ct. No. 10F06026) |

A jury convicted defendant George Lee Jones of driving under the influence of an alcoholic beverage and causing bodily injury (Veh. Code, § 23153, subd. (a)[1]; count one), driving with a blood alcohol content of .08 percent or more and causing bodily injury (§ 23153, subd. (b); count two), driving without a valid driver's license, a misdemeanor (§ 12500, subd. (a); count three), driving while his driver's license was suspended or revoked, a misdemeanor (§ 14601.2, subd. (a); count four), and leaving the scene of an injury accident (§ 20001, subd. (a); count five).  The jury found defendant's blood alcohol content was .15 percent or more (§ 23578) and he caused personal injury to four people (§ 23558).

---

[1]    Undesignated statutory references are to the Vehicle Code.

In bifurcated proceedings, the trial court found defendant had previously been convicted on three separate occasions of driving under the influence of an alcoholic beverage and/or with a blood alcohol content of .08 percent or more, had previously been convicted four times of driving with a suspended or revoked driver's license, and had previously served five separate prison terms (Pen. Code, § 667.5, subd. (b)).

The court sentenced defendant to state prison for an aggregate term of 12 years 8 months.

Defendant appeals. He contends (1) the trial court prejudicially erred in failing to instruct on his defense of unconsciousness and (2) insufficient evidence supports count five (leaving the scene of an injury accident). Defendant's contentions are based on the premise that he was unconscious before, during, and after the accident. As a result, he asserts the trial court was required to instruct sua sponte on the affirmative defense of unconsciousness. We reject this contention because there was no evidence defendant was unconscious at the scene of the accident. We also reject defendant's contention that the evidence was lacking as to his knowledge he had been involved in an injury accident and his conviction violates his federal due process right. We conclude more than sufficient evidence supports his conviction. Accordingly, we affirm the judgment.

FACTS

There were several witnesses to the accident that provided the bulk of the testimony at trial.

On September 9, 2010, Lynnetta Vaughn and defendant started drinking beer and vodka in the late afternoon and stopped drinking at 9:00 or 9:30 p.m. Vaughn estimated they drank approximately 18 beers all together. Sometime around 10:30 or 11:00 a.m. on September 10, 2010, they started drinking beer again. Before 1:30 p.m. defendant bought a bottle of whiskey, most of which they drank. Vaughn told defendant not to drive after drinking but he did not care. Defendant drove his truck with Vaughn as his front-seat passenger. Vaughn claimed defendant "was going through an intersection and he didn't

2

see a vehicle come and there was a wreck." Vaughn stated defendant's truck did not hit the car squarely in the back but rather "more like a side rear-end." Vaughn was not wearing a seat belt and suffered an injury to her back. After the collision, defendant "wanted to take off" and drove away. When they finally came to a stop, Vaughn claimed she and defendant "went to sleep."

About 1:30 p.m. on September 10, 2010, Marcy Mossawir took the J Street exit off southbound Interstate Highway 5 en route to the downtown Macy's. At the end of the off-ramp, Mossawir saw an older model green truck stopped. Cars were honking and trying to avoid the truck. The driver of the truck, a man, was "kind of bent over the steering wheel." There were no cars in front of the truck to prevent it from moving forward. At the intersection of J and 5th Streets, Mossawir saw the green truck "coming into the lane next to [her], and it was coming really, really fast. In fact, it was accelerating," estimating the truck's speed at 45 miles per hour. The cars in front of Mossawir were all stopped for a red light. The green truck hit a car "very hard," "smash[ing] the whole back" as if the car "exploded" with "[p]arts of it just [going] everywhere." A few seconds later, the green truck backed up, pulled around to the right of the car, and then continued on J Street. Mossawir wrote down the license plate number of the green truck, pulled in behind the damaged car, put on her emergency flashers, and waited until a police officer arrived.

Zachary Sampson was stopped at the red light at J and 5th Streets. He sat just behind the limit line and in front of a Honda Accord, the car hit by the green truck. The Honda hit the rear of his car, a Nissan 240 SX, "cav[ing] in [his] back bumper and also the lower part of [his] trunk so [his] trunk couldn't close all the way." Sampson described the damage to the Honda: "The whole back half was completely caved in." Sampson saw the driver of the truck flee the scene, "burn[ing] rubber" with his radiator fluid leaking in the road. One driver tried to block defendant's escape. Brittney Wilson, a passenger in Sampson's car, saw the truck "back up a little bit, go around that little

3

Honda . . . that was like totaled" and took off. Sampson suffered bruising as a result of the collision. Wilson went to a hospital emergency room and wore a neck brace for four days.

Sacramento County Deputy Sheriff Sheadon Wood was off duty and on his way to the downtown mall. He was stopped in his four-door Honda Accord at the red light at J and 5th Streets. Wood was behind one car that was stopped behind the limit line. When the light turned green, Wood glanced in his rear view mirror and "saw a vehicle that was coming towards [him]. And all [he] saw was a green hood and a grill of the car, and [he] knew at that time that it was not going to stop." The force of the collision pushed Wood's car into the car in front of him (Sampson's car). Wood said, "it was pretty much like an explosion inside [his] car. Everything in [his] car flew in the air." Within a few seconds after the collision, the truck backed up. The driver of the truck, defendant, pulled up alongside Wood's car and "leaned over and looked at [Wood], and [Wood] looked at [defendant] for probably a good 4 to 5 seconds." Defendant then "just punched the engine and took off." Wood suffered injuries to his left shoulder, a bruised thigh, and "was just very, very sore for a good two to three weeks after" the collision.

Daniel Hurff, working as a security guard in the Traveler's building at 428 J Street, heard the collision. Hurff walked outside and saw a green pickup truck "imbedded in the back of the [Honda]" that had bumped the car in front of it. As Hurff approached the back of the green truck, it started to back up. Instead of pulling over to the side of the road, the truck "pulled up near the right side of the [Honda] slowly, and then kind of paused for a second, and then it just started burning rubber and start[ed] taking off down the road." Hurff wrote down the license plate number of the truck. Hurff estimated the truck was going 25 to 30 miles per hour as it sped through the intersection.

Wendy Jenkins was stopped at the red light. As she looked in her rearview mirror, Jenkins saw a truck coming toward her at "freeway speed going really, really fast" and a

moment later heard a "loud boom."  The truck hit the car in the lane next to her.  The truck continued on J Street.  Jenkins followed the truck, which was going "in excess of 35 miles an hour" and called 911.  The truck turned right onto 11th Street and then ran into a post blocking access to the K Street mall.  Jenkins sat in her car and waited for the police.  The driver of the truck, defendant, "fell out of" his truck.  Jenkins described defendant as "very, very drunk."  She saw "a bunch of cans spilling out of the vehicle along with the driver."  Defendant fell onto the pavement and then either fell asleep or became unconscious.

Tenisha Buckley was stopped for the red light and heard a loud sound like a collision.  Buckley noticed the car next to hers "was all smushed in."  Buckley saw the truck back up, go around the car and leave the scene.  Buckley followed the truck driven by defendant and called 911.  Buckley claimed defendant "was driving pretty normally.  Not like he was trying to escape or anything, like he was going super fast."  Defendant turned onto 11th Street and ran into a post at the end of the street.  Buckley was talking to the police dispatcher when she saw defendant slowly get out of the truck, stumble, and fall to the ground.

As Tony Small approached the red light, he saw a green truck "gliding by 15, maybe 20 miles an hour" and then rear end the car "so hard that [the truck] had come up and then landed back in that lane."  The truck had not slowed before colliding with the car.  Small drove slowly around the cars involved in the collision and followed the truck.  The truck turned onto a street and ran into a post blocking the entrance to the mall.  Small parked his car and walked up to defendant, the driver of the truck, and told him to turn off the truck's engine.  Defendant did not respond.  Small assisted defendant in opening the driver's side door and defendant "stumbled out."  Small saw several cans of "Steel Reserve fall out of the cab, along with various other debris."  Defendant was unable to stand and smelled of alcohol and urine.  Defendant took a couple of steps and then sat on the ground.

5

Sacramento Police Officer Ethan Zeek, who was on bicycle patrol, was dispatched to an automobile collision at J and 5th Streets. Before he arrived, Officer Zeek was informed that "one of the vehicles had fled the scene" and proceeded to J and 11th Streets "where the fleeing vehicle had crashed again." Officer Zeek "saw a green F150 truck that was crashed into large poles to prevent vehicle traffic driving on K Street Mall." About 30 feet away, Officer Zeek "saw a male subject lying" on the sidewalk. The man, defendant, "had a very strong odor of alcoholic beverages coming from him." The officer testified that defendant was passed out. In response to the officer's queries about his condition, defendant repeatedly gave his name. Officer Zeek tried to get defendant to sit up but he "slowly slumped back over." Looking into the open cab of the pickup truck, Officer Zeek saw a beer can and a bottle of brake fluid on the front seat and a whiskey bottle and some more beer cans on the floorboard. The officer found the rear window of the Honda on the hood of defendant's truck.

At the county jail at 2:55 p.m., a blood sample was obtained from defendant. Defendant was unable to perform any field sobriety tests because he was unable to stand on his own. A criminalist performed a chemical analysis of the blood sample and determined the blood alcohol content to be .26 percent, "approximately 13 and a half drink equivalents" in his system at the time of the blood test.

Defendant did not stop and provide any identifying or insurance information. It was stipulated that as of the date of the collision, defendant's driver's license was "suspended for a lawful reason" and he "knew that his driving privilege was suspended."

Defendant did not testify or present any evidence.

DISCUSSION

I

*Instructional Error*

Defendant contends the trial court prejudicially erred in failing to instruct sua sponte on the defense that if he was unconscious or disabled at the time of the collision,

6

he was relieved of the duty to perform the requirements of section 20001.[2] We reject defendant's contention.

"In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case." (*People v. Martinez* (2010) 47 Cal.4th 911, 953.) " 'A trial court's duty to instruct, sua sponte, on particular defenses arises " 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " ' " (*Ibid.*)

"An unconscious act, as defined 'within the contemplation of the Penal Code is one committed by a person who because of somnambulism, a blow on the head, or similar cause is not conscious of acting and whose act therefore cannot be deemed volitional.' " (*People v. Ferguson* (2011) 194 Cal.App.4th 1070, 1083.) Unconsciousness due to voluntary intoxication is available only as a partial defense to a crime requiring specific intent. "While evidence of voluntary intoxication is admissible on the issue of whether or not a defendant actually formed a required specific intent or mental state (Pen. Code, [former] § 22, subd. (b) [now § 29.4; Stats. 2012, ch. 162, § 119]; *People v. Velez* (1985) 175 Cal.App.3d 785, 791 (*Velez*)), voluntary intoxication 'is not a defense to a general intent crime.' " (*People v. Mathson* (2012) 210 Cal.App.4th 1297, 1312.)

---

[2]    Section 20001 provides, in relevant part, as follows:  "(a) The driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, or in the death of a person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004."

Section 20003 requires the driver involved in an injury accident to provide identifying information and to render reasonable assistance.  Section 20004 sets forth the driver's duty when the accident involves a death.

In this case, voluntary intoxication is not a defense because section 20001 is a general intent crime. "The elements of the offense proscribed by section 20001 . . . are the failure of the driver involved in an accident resulting in injury to a person to stop and perform the acts required therein [citation] and knowledge by the driver of the injury [citation]. 'Usually, however, such knowledge must be derived from the surrounding facts and circumstances of the accident' [citations] and 'criminal liability attaches to a driver who knowingly leaves the scene of an accident if he [or she] actually knew of the injury or if he [or she] knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person.' [Citations.]" (*People v. Rocovich* (1969) 269 Cal.App.2d 489, 492-493.)

The trial court instructed the jury with CALCRIM No. 2140 on the elements of the offense (§ 20001). Defendant contends the trial court erroneously omitted the part of CALCRIM No. 2140 that provides, under certain circumstances, a defendant may be relieved of the duties under section 20001: "If the accident caused the defendant to be unconscious or disabled so that (he/she) was not capable of performing the duties required by law, then (he/she) did not have to perform those duties at that time. [However, (he/she) was required to do so as soon as reasonably possible.]" (CALCRIM No. 2140.)[3] Defendant argues, "the evidence of [his] conduct before, during, and after the accident indicates he was at least for part of the time, if not for the entire time of the accident, unconscious, and therefore did not possess the knowledge required to sustain a

---

[3] In his reply brief, defendant argues for the first time that this omitted portion as drafted is in error. We need not consider this point since he did not raise it in his opening brief. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8; see also *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10 [unfair to consider issues raised in reply brief]; *People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.) In any event, in support of his claim of drafting error, he misplaces his reliance upon the general instruction on unconsciousness (CALCRIM No. 3425) which applies when unconsciousness may be caused by, inter alia, involuntary intoxication.

8

conviction under section 20001." Defendant argues the evidence shows he was unconscious when his truck was stopped on the freeway ramp because he was described as slumped over the steering wheel. He then accelerated, never braking, into the back end of the car which, he argues, shows he was unconscious at the time of the accident. After colliding with the car, he drove to another area where he ran into a post, which shows he was unconscious then as well.[4]

We reject defendant's claim of instructional error. The bench notes for CALCRIM No. 2140 state: "Give the bracketed paragraph that begins with 'If the accident caused the defendant to be unconscious' if there is sufficient evidence that the defendant was unconscious or disabled at the scene of the accident." (CALCRIM No. 2140 (2011, vol. 2) p. 173.) There was no evidence defendant was rendered unconscious or disabled at the accident at 5th and J Streets. Instead, the evidence shows that after the collision, defendant was able to back up, go around the car he had hit, look at the driver of the Honda for a few seconds, and then proceed down J Street for six more blocks, make a right-hand turn onto 11th Street before crashing again, this time into a post blocking vehicle access to the K Street mall. Further, Vaughn, defendant's passenger, testified that after the collision at 5th and J Streets, defendant "wanted to take off" and did flee the scene of the accident. This evidence shows defendant realized he had been in a collision at 5th and J Streets and had likely injured someone, not that he was rendered unconscious by the accident.

Defendant's attempts to use the facts in other cases to show he was unconscious at all relevant times related to the accident are not helpful. Defendant's comparison of facts is unpersuasive because the testimony of several witnesses and the passenger in his truck

---

**4** Defendant cites *People v. Wells* (2012) 204 Cal.App.4th 743 in support of his claim that a failure to brake or swerve is substantial evidence of unconsciousness. *Wells* was depublished on July 18, 2012 (2012 CAL. LEXIS 7825), and is not citable.

9

clearly show defendant was not rendered unconscious by the accident. Accordingly, the trial court was not required to instruct sua sponte on the affirmative defense of unconsciousness. There was no instructional error.

## II

### *Sufficiency of the Evidence*

Defendant contends insufficient evidence supports his conviction for violating section 20001 (count five). Because, he claims, he was unconscious before, during, and after the collision, there was insufficient evidence of his knowledge that he had been in an injury accident. Defendant does not challenge any other element of the offense. We conclude sufficient evidence supports defendant's conviction on count five.

"In reviewing a challenge to the sufficiency of the evidence under the due process clause of the Fourteenth Amendment to the United States Constitution and/or the due process clause of article I, section 15 of the California Constitution, we review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence -— that is, evidence that is reasonable, credible, and of solid value -— from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Cole* (2004) 33 Cal.4th 1158, 1212.)

The prosecution need not prove actual knowledge of injury. If the evidence shows the defendant " 'knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person,' " the evidence is sufficient to prove knowledge. (*People v. Nordberg* (2010) 189 Cal.App.4th 1228, 1237-1238; *People v. Holford* (1965) 63 Cal.2d 74, 79-80.)

Defendant's comparison of facts here to the facts in other cases is not persuasive. "Reviewing the sufficiency of evidence, however, necessarily calls for analysis of the unique facts and inferences present in each case, and therefore comparisons between cases are of little value." (*People v. Rundle* (2008) 43 Cal.4th 76, 137-138.) Defendant's reliance on *People v. Mayo* (1961) 194 Cal.App.2d 527 and attempt to distinguish *People*

10

*v. Flores* (1996) 51 Cal.App.4th 1199 are unavailing.  In *Mayo,* the court found there was insufficient evidence to show the defendant had knowledge that another car in the accident had been damaged and someone had been injured.  *Mayo* noted there was no evidence of what the defendant would have been able to see at night.  (*Mayo, supra*, 194 Cal.App.2d at pp. 529-536.)  Here, there is ample evidence defendant had knowledge of the fact he was in an injury accident.  In *Flores,* the defendant skidded and crashed into another car, rendering the defendant unconscious for one to six minutes at the accident scene.  After the defendant regained consciousness, she did not comply with section 20001.  *Flores* affirmed the defendant's conviction for violating section 20001.  (*Flores, supra*, 51 Cal.App.4th at pp. 1201-1206.)  Here, defendant was not rendered unconscious by the accident.

There was no evidence defendant was unconscious before, during, or after the accident.  The facts are compelling.  One driver described the collision as defendant's truck smashing the whole back end of the Honda, causing parts of the Honda to fly everywhere.  Indeed, the Honda's rear window landed on the hood of defendant's truck.  Several witnesses testified that shortly after the collision, defendant backed up his truck from the Honda, making the extensive damage to the Honda visible to defendant.  Vaughn, defendant's passenger, stated that after the collision, defendant "wanted to take off" and he did just that.  After backing up, defendant pulled alongside Wood, leaned over, and looked at Wood for several seconds.  Defendant then sped away with radiator fluid leaking on the road.  Defendant was followed by three drivers who had been at the scene of the collision.  Defendant drove six more blocks, turned right, and then crashed into a post.  With some assistance, defendant opened the driver's door of the truck and stumbled out.  He sat down and then passed out.

Clearly, sufficient evidence supports defendant's conviction on count five (§ 20001).  The evidence demonstrated defendant's knowledge he had caused extensive damage to the Honda and the accident was of such a nature as to cause injury.  (*Cole,*

11

*supra,* 33 Cal.4th at p. 1212.)  Based on the sufficiency of the evidence, defendant has failed to demonstrate a federal due process violation.

DISPOSITION

The judgment is affirmed.


       HOCH    , J.


We concur:


     HULL    , Acting P. J.


     ROBIE   , J.